395 So.2d 783 (1981)
STATE of Louisiana
v.
Shirley HATHORN.
No. 80-KA-1701.
Supreme Court of Louisiana.
March 2, 1981.
Rehearing Denied April 6, 1981.
*784 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., John Craft, Judith Lombardino, Louise Korns, Asst. Dist. Attys., for plaintiff-appellee.
Charles R. Jones, New Orleans, for defendant-appellant.
MARCUS, Justice.[*]
Shirley Hathorn was charged in the same information with four counts of cruelty to juveniles in violation of La.R.S. 14:93. At arraignment, defendant entered pleas of not guilty and not guilty by reason of insanity. After a bench trial, defendant was found guilty as charged and sentenced to serve four years at hard labor on each count, with the sentences to run concurrently. The court suspended execution of the sentences and placed defendant on probation for five years under the conditions of probation of La.Code Crim.P. art. 895, with the specific condition that she receive psychiatric treatment until it is deemed no longer necessary by her physician. On appeal, defendant relies on nine assignments of error for reversal of her convictions and sentences.

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial judge erred in denying her motion for a judgment of acquittal at the close of the state's evidence. She argues that the state failed to produce sufficient evidence to sustain the convictions, specifically that "unreasonable pain and suffering" was caused to the children.
La.R.S. 14:93 provides in pertinent part:
Cruelty to juveniles is the intentional or criminally negligent mistreatment or neglect, by anyone over the age of seventeen, of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child.
The record reflects that on June 29, 1979, defendant prepared a breakfast of eggs, grits and juice for her four children: James, age 15; Troy, age 14; Angel, age 12; and Navara, age 11. Defendant ground up into the food a quantity of rat poison which she had purchased on June 23, 1979, with the intent of killing her children with it. Defendant served the food to the children. At one point, defendant told the children that they did not have to eat the food and started to remove it, but the children told her that they were hungry and she allowed them to finish the meal. Defendant then consumed 120 sleeping pills in an attempt to take her own life. Upon her husband's return home a short time later, defendant informed him of what she had done. She also told each of the children that she had fed them rat poison.
Defendant and the four children were taken to the hospital for treatment. The children were administered a "charcoal-tasting" liquid and a quantity of water to induce vomiting. Each of the children subsequently vomited. The children were also *785 given shots and each child had to have a blood sample taken.
While the children generally testified favorably to their mother by denying that they experienced any pain or suffering as a result of the poisoning or their subsequent hospital treatment, Navara Hathorn did state that he experienced "some pain" in his stomach after eating breakfast and Angel Hathorn admitted that the induced vomiting had hurt her. Both of these children complained of the liquid administered to induce vomiting.
After review of the evidence, we are convinced that defendant's conduct in feeding rat poison to her children and their subsequent treatment at the hospital caused them unjustifiable pain or suffering. Moreover, the knowledge by these children, who were of ages of understanding, that their mother had attempted to kill them by feeding them rat poison must have adversely affected them psychologically. This is further evidence of unjustifiable pain or suffering. Clearly, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found "unjustifiable pain or suffering" beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Hence, the trial judge did not err in denying defendant's motion for a judgment of acquittal.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends the trial judge erred in allowing in evidence certain inculpatory statements made by her to Ms. Lise LeBlanc. She argues that the statements were not freely and voluntarily made after having been advised of her Miranda rights.
Lise LeBlanc, a caseworker with the Child Protection Center, testified that she had interviewed defendant on June 29, 1979, in the emergency room at the hospital after receiving a referral concerning alleged child abuse. She identified herself to defendant and told her for whom she worked. Defendant freely spoke with her and told her that she had given her children some rat poison and had taken some sleeping pills because of marital problems. Ms. LeBlanc again interviewed defendant on July 3, 1979, in the psychiatric ward at the hospital. She again identified herself and told defendant why she was there. Defendant recounted a history of marital problems and stated that, upon learning that a job transfer she had hoped for had not come through, she had bought sleeping pills with the intent of killing herself and rat poison with the intent of killing the children. Defendant then described how she had put the rat poison in the children's breakfast and fed it to them. Ms. LeBlanc testified that in neither instance did she threaten, coerce or promise anything to defendant in order to get defendant to speak to her. At the conclusion of the state's predicate for both statements, the trial judge found that defendant's statements were free and voluntary.
Before a confession or inculpatory statement can be introduced in evidence, it must be affirmatively shown by the state that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451. If the interrogation and subsequent confession are in a non-custodial situation, the only showing which the state must make is whether the confession is free and voluntary, as the Miranda warnings apply only to custodial interrogations. State v. Pittman, 368 So.2d 705 (La.1979).
In the instant case, defendant had not been placed under arrest at the time of her interview with Ms. LeBlanc. Nor was Ms. LeBlanc a law enforcement officer with powers of arrest. Clearly, no Miranda warnings were required, as defendant's statements were made in a noncustodial situation and defendant was not being subjected to interrogation by a police officer. Moreover, the record affirmatively shows that the noncustodial inculpatory statements were freely and voluntarily made. Hence, the trial judge did not err in admitting the statements in evidence.
*786 Assignment of Error No. 2 is without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant contends the trial judge erred in denying her an opportunity to question Lise LeBlanc as to evidence of prior child abuse on the part of defendant.
During cross-examination, defendant attempted to elicit testimony from Lise LeBlanc, a caseworker at the Child Protection Center, as to evidence that defendant had previously abused her children. The state objected on the ground that the question was irrelevant. The trial judge sustained the objection.
To be admissible in a criminal proceeding, evidence must be relevant to a material issue. La.R.S. 15:435; State v. Johnson, 343 So.2d 155 (La.1977). Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent. La.R.S. 15:441. The trial judge is vested with wide discretion in determining the relevancy of evidence, and his ruling will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. State v. King, 355 So.2d 1305 (La.1978).
Clearly, the evidence sought to be introduced by defendant would not have tended to prove or disprove any material issue in this trial. We find no abuse of discretion by the trial judge in determining that the testimony sought to be adduced was irrelevant and thus inadmissible.
Assignment of Error No. 3 is without merit.

ASSIGNMENT OF ERROR NO. 4
Defendant contends the trial judge erred in allowing redirect examination of James Hathorn and Lise LeBlanc on matters not covered in cross-examination.
During redirect examination of James Hathorn and Lise LeBlanc, the prosecutrix asked questions of both witnesses to which defendant objected on the ground that the questions were beyond the scope of redirect examination. The trial judge overruled the objection in both instances.
La.R.S. 15:281 provides that redirect examination must be confined to the subject matter of the cross-examination and to the explanation of statements elicited on cross-examination; but the application of this rule is within the discretion of the trial judge, provided that the opportunity to recross on the new matter brought out on the redirect is not denied.
Pretermitting the question of whether the questions asked on redirect were in fact beyond the scope of the cross-examination, we find no abuse of discretion by the trial judge in the instant case in allowing these questions on redirect. In both instances, defendant was allowed the opportunity to recross-examine the witness as to the matters in question.
Assignment of Error No. 4 is without merit.

ASSIGNMENT OF ERROR NO. 5
Defendant contends the trial judge erred in refusing to allow Bonnet Randall to read a document into the record.
On direct examination, defense counsel asked Bonnet Randall, a character witness for defendant, to read to the court a document on which the witness' signature appeared. The document apparently contained a statement attesting to the good character of defendant, signed by the witness and a number of other persons. The prosecutrix objected to the reading of the document. The trial judge sustained the objection.
Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. State v. Martin, 356 So.2d 1370 (La.1978); McCormick, Evidence (Cleary ed. 1972), § 246. Hearsay evidence is inadmissible except under one of the statutory or well-recognized exceptions. La.R.S. 15:434; State v. Sheppard, 350 So.2d 615 (La.1977).
*787 The document at issue was written evidence of a statement made out of court, offered to show the truth of the matter asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. Accordingly, the content of the document constituted hearsay evidence. Moreover, it was not admissible under one of the exceptions to the hearsay rule. Hence, testimony as to its content was properly excluded by the trial judge as inadmissible hearsay.
Assignment of Error No. 5 is without merit.

ASSIGNMENT OF ERROR NO. 6
Defendant contends the trial judge erred in allowing in evidence the testimony of Dr. Edward Schwery. Defendant argues that the witness' testimony was irrelevant.
At trial, the state called as a rebuttal witness Dr. Edward Schwery, a clinical psychologist, apparently to rebut the testimony of defense witness Dr. Joseph Marnell. Dr. Schwery testified that he had examined defendant on August 29, 1979, two months after the date of the crime (June 29, 1979). Defendant argues that because Dr. Schwery was unable to testify as to defendant's mental state at the time of the commission of the offense, any testimony concerning defendant's state of mind two months later would be irrelevant.
Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent. La.R.S. 15:441. The trial judge's ruling as to the relevance of evidence will not be disturbed absent clear abuse of discretion. State v. Echols, 376 So.2d 1244 (La.1979).
In the instant case, defendant had entered a plea of not guilty and not guilty by reason of insanity. Dr. Marnell testified that in the week following the offense, he had diagnosed defendant as suffering from a depersonalization neurosis at the time of the crime which rendered her unable to tell the difference between right and wrong. Dr. Schwery testified that although he could not describe defendant's mental state at the time of the offense, he had found defendant to be "essentially normal" and he had found no residuals from depersonalization neurosis in defendant such as he would have expected to find had she indeed been suffering from that disorder two months previously. Clearly, such testimony by a clinical psychologist based on an examination subsequent to the time of the offense was relevant to the issue of defendant's sanity. We are unable to say that the trial judge abused his discretion in allowing such testimony in evidence.
Assignment of Error No. 6 is without merit.

ASSIGNMENTS OF ERROR NOS. 7 AND 8
Defendant contends the trial judge erred in denying her motion for a new trial in finding that she failed to establish the defense of insanity by a preponderance of the evidence and in finding defendant guilty beyond a reasonable doubt.
At arraignment, defendant entered a plea of "not guilty and not guilty by reason of insanity" as to all counts. At trial, defense witness Dr. Joseph Marnell, a psychiatrist with the Tulane University School of Medicine, testified that he had examined defendant on the date of her admission to Charity Hospital and determined that there was no evidence that she was insane and that she did know right from wrong. Dr. Marnell thereafter saw defendant on a daily basis for a week while she was at the hospital and examined her several times following her release. Dr. Marnell subsequently concluded that at the time of the offense, defendant was suffering from a depersonalization neurosis which rendered her incapable of distinguishing right from wrong.
Dr. Edward Schwery, a clinical psychologist testifying as a state rebuttal witness, stated that he had examined defendant in August of 1979 and found her to be essentially normal with no mental disorder present in her functioning. Dr. Schwery testified that he found no residuals of depersonalization neurosis in defendant and *788 that such residuals would be expected in a person who had suffered that disorder two months previously. He stated that persons suffering from a neurosis might experience anxiety or have difficulty functioning, but "usually are very well in contact with reality," and that the situation was rare in which a person suffering with neurosis could in fact be insane.
A legal presumption exists that the defendant is sane and responsible for his actions. La.R.S. 15:432. The defendant has the burden of establishing the defense of insanity at the time of the offense by a preponderance of the evidence. La.Code Crim.P. art. 652. If the circumstances indicate that because of a mental disease or mental defect the defendant was incapable of distinguishing between right and wrong with reference to the conduct in question, the defendant shall be exempt from criminal responsibility. La.R.S. 14:14. Defendant argues that she established the affirmative defense of insanity by a preponderance of the evidence and that no rational trier of fact could have found her sane on the evidence in the record.
The only testimony presented by defendant at trial to establish her insanity was that of Dr. Marnell. His testimony taken with that of Dr. Schwery is inconclusive as to whether defendant was in fact suffering a depersonalization neurosis at the time of the offense and whether such a disorder would have rendered her incapable of distinguishing between right and wrong. The testimony of character witnesses for defendant was to the effect that she had never demonstrated any erratic or abnormal behavior in their presence. Defendant described to Ms. Lise LeBlanc and to Dr. Marnell the planning of her suicide and the deaths of her children for a number of days prior to the offense and stated that she had purchased the rat poison six days before the crime with the intent of killing her children with it. Defendant also stated that upon feeding the poison to the children, she had changed her mind and had regrets about what she had done, but allowed the children to eat the poison anyway. She was able to tell her husband exactly what she had done and stated to each of the children that she had fed them rat poison. Her memory of the incident was clear and she had no difficulty in recounting the details of her acts.
Viewing the evidence in the light most favorable to the prosecution, we conclude that defendant did not establish the affirmative defense of insanity by a preponderance of the evidence, and we find that any rational trier of fact could have found defendant guilty beyond a reasonable doubt. Moore v. Duckworth, 443 U.S. 713, 99 S.Ct. 3088, 61 L.Ed.2d 865 (1979); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Hence, the trial judge did not err in denying defendant's motion for a new trial.
Assignments of Error Nos. 7 and 8 are without merit.

ASSIGNMENT OF ERROR NO. 9
Defendant urges this court to review the record for error patent on its face. Having done so, we find none. La.Code Crim.P. art. 920(2). Assignment of Error No. 9 is without merit.

DECREE
For the reasons assigned, defendant's convictions and sentences are affirmed.
DIXON, C. J., dissents with reasons.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
Shirley Hathorn was convicted of four counts of cruelty to juveniles, R.S. 14:93, and was sentenced to four years at hard labor on each count, the sentences to run concurrently. The sentences were suspended under C.Cr.P. 895, with the special condition that she receive psychiatric treatment until deemed no longer necessary by her physician. Additionally, she was placed on a five year probation. She has appealed her convictions and sentences, relying upon eight assignments of error. The children were returned to the custody of defendant. Her first assignment should require reversal of her convictions and sentences.
*789 On June 29, 1979 Mrs. Hathorn served a breakfast of grits and eggs to her four children, aged, fifteen, fourteen, twelve and eleven. The grits contained fragments of rat poison which had been ground up into pieces. While the children ate, or shortly afterward, the defendant attempted suicide by consuming one hundred twenty sleeping pills. However, she changed her mind and reported to her husband what she had done. The entire family was rushed to Charity Hospital. The children were tested, treated and made to vomit. Mrs. Hathorn spent a week in the psychiatric ward.
Charged with cruelty for the poisoning of her four children, Mrs. Hathorn waived trial by jury, and was tried before the judge alone. Only two factual issues were seriously contested at trialwhether the children suffered and whether the defendant was legally insane at the time of the commission of the instant offense. Mrs. Hathorn admitted that she had poisoned the children in an attempt to kill them. Her motive in doing so, according to Dr. Joseph Marnell, her psychiatrist, was to spare them from the misery she had known all her life.
In Assignment of Error No. 1, the defendant contests the trial judge's denial of her motion for acquittal at the close of the state's case in chief.[1] C.Cr.P. 778. Specifically, she argues that the state failed to prove that the children experienced "unjustifiable pain or suffering," an element of the offense of cruelty to juveniles. R.S. 14:93. In evaluating the sufficiency of the evidence used to convict, the inquiry of this court is:
"... whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt...." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).
See also State v. Harveston, 389 So.2d 63 (La.1980); State v. Guillot, 389 So.2d 68 (La.1980); State v. Morgan, 389 So.2d 364 (La.1980); State v. Williams, 389 So.2d 384 (La.1980).
After viewing the evidence in a light most favorable to the prosecution, I find that no rational trier of fact could have concluded that the state proved pain or suffering beyond a reasonable doubt. Two of the children testified that they experienced neither pain nor suffering; one admitted only slight and transitory pains after breakfast; the fourth admitted to slight discomfort while vomiting. Only a trace of warfarin, a substance used in some rat poisons, was found in the blood of three of the four children.[2] Warfarin does not cause pain or suffering, but is an anti-coagulant used in treating some circulatory diseases, which, in large doses, will cause a reaction like hemophilia.
In denying the defendant's motion for acquittal, the trial judge apparently relied upon the state's argument that, despite their testimony at trial, the children were in pain when blood was drawn and vomiting induced. The record evidence in this case does not support this conclusion. Even if the trial judge discredited the children's testimony, there is no other evidence establishing that the children underwent either pain or suffering.
Where, as here, "unjustifiable pain and suffering" is an element of the offense, the burden is upon the state to prove beyond a reasonable doubt that pain or suffering occurred. There is no evidenceeither direct or circumstantialupon which a rational trier of fact could base a finding that either pain or suffering occurred because blood was drawn and vomiting induced.
The state's argument in brief is that the children experienced psychological harm as a consequence of knowing their mother tried to kill them. Cf. State v. Barr, 354 *790 So.2d 1344 (La.1978). The record is devoid of any evidence of psychological harm. By contrast, Dr. Marnell, the defendant's psychiatrist, testified that he had examined the children and found no significant psychological residuum from the incident.
The evidence adduced at trial does not support the verdict of guilty of violating R.S. 14:93. Nor is the evidence sufficient to sustain a conviction for attempted cruelty to juveniles.[3] Warfarin, the active ingredient in the rat poison, does not itself cause any pain, according to the testimony of Dr. Monroe Samuels, a pathologist who testified for the state. Warfarin is an anti-coagulant, used in treatment of cardiovascular diseases. Additionally, only a trace of warfarin was found in the children's blood. According to Dr. Samuels, this amount, although detectable, was not even enough to "quantify." Thus, absent the induced vomiting, there apparently was not enough warfarin ingested to produce any results whatsoever.
The absence of evidence on pain and suffering should require that the convictions be reversed. The state failed to prove essential elements of the offenses charged.
Although the state failed to prove that the defendant's action constituted cruelty to juveniles, the record evidence before us would be sufficient to sustain a conviction for attempted murder. By her own admission, the defendant specifically intended to kill her children. Additionally, the Criminal Code defines battery as "... the intentional administration of a poison or other noxious liquid or substance to another." R.S. 14:33. Mrs. Hathorn might have been charged with simple battery, R.S. 14:35, simple assault, R.S. 14:38, or mingling harmful substances, R.S. 14:38.1. Several options were available to the state, but the state chose instead to prosecute the defendant for a crime whose elements were not, and, in all probability, could not have been, proven.
For the foregoing reasons, the convictions and sentences should be reversed, and the case dismissed.
NOTES
[*] Judges Edmond L. Guidry, Jr., J. Burton Foret and P. J. Laborde, Jr. of the Court of Appeal, Third Circuit, participated in this decision as associate justices ad hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Lemmon.
[1] Defense counsel styled his motion as one for a directed verdict, but under the Code of Criminal Procedure, the proper motion is one for acquittal.
[2] No test results were presented at trial on the fourth child. Two tests were run on one of the children, the first indicating traces of warfarin while the second indicating that no warfarin was present in the blood.
[3] In State v. Byrd, 385 So.2d 248, 251 (La. 1980), this court announced that, even "[w]hen the evidence does not support a conviction of the crime charged ... the discharge of the defendant is neither necessary or proper when the evidence does support a conviction on a lesser and included offense which was a legislatively authorized responsive verdict...." The Criminal Code defines attempt as "... a separate but lesser grade of the intended crime...." R.S. 14:27. For this reason, attempt is classified as a responsive verdict by the legislature. C.Cr.P. 815. Therefore, if the record evidence supported a conviction for attempted cruelty to juveniles, this court would order a judgment of conviction for that lesser and included offense.