MARCUS, Justice.
David Joseph Narcisse was charged by bill of information with armed robbery in violation of La.R.S. 14:64. After trial by jury, defendant was found guilty as charged by a vote of ten to two. The state then filed an information accusing defendant of being an habitual offender under La.R.S. 15:529.1 (Habitual Offender Law). After a hearing, the judge found defendant to be an habitual offender and sentenced him to serve sixty years at hard labor without benefit of parole, probation or suspension of sentence. On appeal, defendant relies on seven assignments of error for reversal of his conviction and sentence. Finding reversible error in one of the assigned errors, we need not consider the others.
Defendant contends that the trial judge erred in denying his motion for a new trial grounded on the claim that there was insufficient evidence to support his conviction for armed robbery.[1] Specifically, he argues that the state failed to prove that he was the person who committed the robbery.
The record reflects that on September 16, 1980, just prior to the robbery, David Nar-cisse was seen in Theriot’s Grocery at the far end of the liquor aisle. Also standing in the liquor aisle, near the end that abutted the store’s courtesy booth, was a taller black male. Both men were observed by the same cashier, Cynthia Gallien, who had known Narcisse for eight years as a casual acquaintance and had seen the taller man on other occasions. Ms. Gallien did not see anyone else in that area of the store at the time. She testified that she had checked in from lunch at 2:00 p.m. and was taking a pickup to the courtesy booth when she first saw Narcisse and the other man. As she left off her pickup and walked back out of the booth, she saw Narcisse and the taller man talking. Ms. Gallien testified that no more than three minutes later, she heard someone command everyone to lay down on the floor. When she glanced back toward the courtesy booth, she observed that the taller man she had seen earlier had entered the courtesy booth and another man, wearing a ski mask, was holding a gun to a cashier’s neck.[2] After the taller man took money from the courtesy booth and the nearest register, at gunpoint, both men fled the store. At least $600 was taken during the robbery.
*949 The police were notified of the robbery at 2:34 p.m. All the witnesses corroborated the story of how the robbery took place. None of the witnesses could positively identify the man in the ski mask. Only Ms. Gallien had seen Narcisse in the store just prior to the robbery. However, she had not noted what he was wearing at the time and therefore could not positively say that Nar-cisse was the masked robber. She did give a statement to the police identifying Nar-cisse as having been with the other robber immediately prior to the time the armed robbery took place. She later picked Nar-cisse’s picture out of a photographic lineup. Pursuant to the information given by Ms. Gallien, a search warrant was issued later that day. While the police waited at Nar-cisse’s apartment, Narcisse was out shopping. He loaned $20 to a neighbor, made five purchases plus one on layaway, and looked at some rings for which he said he would be back later in the week. Narcisse paid cash for each purchase, one with a $50 bill, the rest with $20 bills, for a total of about $150. When Narcisse returned home, the police commenced the search. They found that Narcisse had $280 in his wallet. In addition, two envelopes of cash were found on the top shelf of the bedroom closet: one contained $180; the other contained $111. A .22 caliber revolver was found under the pillow of his bed. Evidence introduced at trial to justify the presence of the money found on Narcisse and in his apartment included the stub from his last weekly paycheck for $279.94 paid September 13, three days prior to the robbery, and testimony that the girlfriend living with him had received over $100 in child support money the day before.
On review of the sufficiency of the evidence to support a criminal conviction, it must be determined whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the defendant committed the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Hathorn, 395 So.2d 783 (La.1981). The rule as to circumstantial evidence is that the evidence must exclude every reasonable hypothesis of innocence. La.R.S. 15:438. Thus, on review of a conviction based on circumstantial evidence, we must determine that viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of the defendant’s innocence had been excluded. State v. Austin, 399 So.2d 158 (La.1981).
Even viewing the evidence in the light most favorable to the prosecution, we are not convinced that a rational trier of fact could have concluded beyond a reasonable doubt that Narcisse was the person wearing the ski mask at the time of the robbery. No witness could positively identify Narcisse as the person in the mask. The only evidence connecting defendant with the robbery was the testimony of Ms. Gallien that she had seen him in the store and talking with the other robber shortly before the robbery took place. She took no note of his clothing and therefore could not positively identify Narcisse as the masked robber. Under the circumstances, the masked robber could reasonably have been a person other than Narcisse. The fact that Narcisse had money and owned a gun are hardly circumstances that necessarily point to him as the robber. Clearly, there was a reasonable hypothesis of innocence. Hence, there is insufficient evidence to support defendant’s conviction for armed robbery. We must reverse.
When a reviewing court reverses a conviction on the ground of evidentiary insufficiency, as distinguished from trial error, the double jeopardy clause of the fifth amendment precludes a second trial and requires the direction of a judgment of acquittal. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); State v. Phillips, 412 So.2d 1061 (La.1982); State v. Davis, 371 So.2d 788 (La.1979); State v. Liggett, 363 So.2d 1184 (La.1978). Hence, *950 defendant must be ordered discharged in this case.[3]
DECREE
For the reasons assigned, the conviction and sentence are annulled and set aside and a judgment of acquittal is rendered as to the charge of armed robbery.
WATSON, J., dissents.

. La.R.S. 14:64 provides in pertinent part:
Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.

. The testimony of the witnesses varied as to the time of the robbery from 2:00 to 2:30 p.m. On cross-examination, Ms. Gallien was asked that, since she had testified that she had returned to the store at 2:00 p.m. and if she were to assume that the robbery took place at 2:30 p.m., would there not be a gap of “about twenty-five minutes” between the time she saw Nar-cisse when she returned from her lunch break and the time of the robbery. She responded in the affirmative.

. State v. Byrd, 385 So.2d 248 (La.1980), wherein this court, held that discharge of a defendant on the ground of insufficiency of the evidence is not necessary or proper when the evidence supports a conviction on a lesser and included offense which is a legislatively authorized responsive verdict, is not applicable to the instant case where the evidentiary insufficiency results from the failure of the state to prove that the accused was the person who committed the offense.