JASPER E. JONES, Judge.
The defendant, Bobby Ray Reed, was convicted by a unanimous twelve member jury of first degree murder in violation of La.R.S. 14:30. At the penalty phase of the trial the jury was unable to reach a unanimous decision on whether to impose the death penalty and defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. On appeal defendant relies on two assignments of error for reversal of his conviction and sentence.[1]
FACTS
At approximately 7:30 p.m. on January 15, 1982 units from the Shreveport Fire Department were called to the Veteran’s Amphitheater parking lot to put out an automobile fire. The rear end of a 1970 Buick LeSabre was on fire. When the blaze was extinguished firemen on the scene pryed the car’s trunk open to see if there were any flames inside that area. Inside the trunk the firemen found a badly burned female still alive. An ambulance was dispatched to the scene and the victim was taken to a Shreveport hospital.
Shreveport Police Detective D.E. Stevens arrived at the parking lot shortly before the ambulance and he followed it to the hospital. While there Stevens interviewed the victim who told him that her boyfriend, Bobby Ray Reed, did this to her. Three days later defendant was arrested and charged with aggravated arson and attempted first degree murder. While in custody defendant gave a voluntary inculpato-ry statement corroborating the story given to Detective Stevens by the victim. Defendant’s statement was recorded. The victim subsequently died from complications arising from her burns and defendant was indicted for first degree murder.
ASSIGNMENT OF ERROR # 2
Defendant contends the trial court’s ruling permitting the State to challenge for cause six prospective jurors who were opposed to the death penalty, denied him the right to a jury from a cross section of the community.
The Code of Criminal Procedure provides that the State may challenge for cause a prospective juror who has conscientious objections against the infliction of capital punishment and who makes it unmistakably clear that: (a) he would automatically vote against the imposition of capital punishment without regard to any evidence developed at trial; or (b) his attitude toward the death penalty would prevent him from making an impartial decision as to defendant’s guilt. La.C.Cr.P. 798(2). The constitutional validity of this article has repeatedly been upheld. State v. Perry, 420 So.2d 139 (La.1982); State v. Jordan, 420 So.2d 420 (La.1982); State v. Moore, 432 So.2d 209 (La.1983); State v. Knighton, 436 So.2d 1141 (La.1983).
Defendant does not contend that the challenges for cause were improperly allowed because the challenged jurors failed to satisfy either of the requirements of C.Cr.P. 798(2). Even if the challenges were improper, such error on the part of the trial court cannot serve as grounds for reversal of a conviction. Such error may only be asserted to attack the death sentence. Witherspoon v. Illinois, 391 U.S. *797 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); State v. Moore, supra. Defendant did not receive the death penalty.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR # 7
Defendant contends the trial court erroneously denied his motions for post-verdict judgment of acquittal and new trial. Both motions raised the issue of whether there was sufficient evidence to establish the existence of two of the essential elements of first degree murder. Defendant contends the State failed to prove he had the specific intent to kill or inflict great bodily harm and failed to prove he was engaged in the perpetration or attempted perpetration of aggravated arson, one of the felonies listed in R.S. 14:30(1).
In parts relevant to this case R.S. 14:30 provides:
First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, aggravated burglary, armed robbery, or simple robbery; ... (emphasis supplied)
At trial defendant presented evidence tending to show that at the time of the commission of the offense he had been drinking heavily, smoking pot and injecting preludin. He claims that as a result of his drug and alcohol induced intoxication he was unable to formulate the specific intent to kill or inflict great bodily harm.
In reviewing a conviction for sufficiency of the evidence, an appellate court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that defendant committed the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Edwards, 420 So.2d 663 (La.1982); State v. Narcisse, 420 So.2d 947 (La.1982); State v. Graham, 420 So.2d 1126 (La.1982).
Specific intent is the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act. La.R.S. 14:10(1). Even though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction and the actions of the defendant. La.R.S. 15:445; State v. Boyer, 406 So.2d 143 (La.1981); State v. Fuller, 414 So.2d 306 (La.1982); State v. Beck, 445 So.2d 470 (La. App.2d Cir.1984).
Voluntary intoxication is a defense to a criminal charge only where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of specific intent. La.R.S. 14:15(2). State v. Boleyn, 328 So.2d 95 (La.1976); State v. Burge, 362 So.2d 1371 (La.1978).
Applying these rules of law to the instant case, the ultimate issue for our determination is whether a rational juror could have found beyond a reasonable doubt that defendant’s drug and alcohol induced intoxication was not so severe as to preclude the presence of specific intent to kill or inflict great bodily harm. In making this determination we must view the evidence in the light most favorable to the prosecution. The following evidence was before the jury:
At some time during the early evening hours of January 15, 1982 defendant went to the victim’s home and they began to argue over money. The argument led to a fight during which defendant beat the victim with his fists, cut her with a knife and pistol whipped her. He then forced the victim into the trunk of her automobile and drove to a service station where he purchased 25 cents worth of gasoline and placed it in a plastic bottle. After acquiring the gas defendant drove to the Veteran’s Amphitheater parking lot which is located in a secluded area near the Red River in Shreveport.
*798 Defendant sat in the parking lot for fifteen to thirty minutes contemplating what to do. His stated purpose was to figure out how to show the victim that “when he asked for something she better give it.” While he was sitting in the parking lot the victim began yelling to him to let her out of the trunk and she promised if he did she would not tell the police what he had done. Defendant stated he knew she would tell the police even though she declared that she would not and for this reason he decided to set the car on fire. In order to accomplish this he removed the rear speakers from the car and poured gasoline directly into the trunk. He then took gasoline soaked rags and made two fuses, one leading to the trunk through the speaker hole and the other leading to the gas tank, and set the fuses on fire. The defendant then walked away from the car after throwing the plastic bottle, which had contained the gasoline, and other evidence over a fence into a wooded area adjacent to the parking lot.
We find that a rational juror could have inferred from the facts and circumstances that defendant had the specific intent to kill or inflict great bodily harm and that his level of intoxication did not render him incapable of formulating that intent. The primary facts upon which we rely for that determination are: defendant drove to a secluded area before setting the fire; he sat in the car for a while contemplating what to do; he decided to set the fire because he thought the victim would report to the police what had previously occurred; he methodically set the fire so that the gas tank would likely explode and where he could get away before it did so;[2] he attempted to dispose of evidence; and he calmly walked away from the scene instead of running in order to draw less attention to himself.
Defendant next argues the State failed to prove first degree murder because his act of setting the car on fire while the victim was locked in the trunk constituted a battery rather than aggravated arson. This argument is untenable. Aggravated arson is defined in part as the intentional setting fire to any movable wherein it is foreseeable that human life might be endangered. La.R.S. 14:51. Defendant intentionally set fire to the car knowing the victim was locked in the trunk. It was foreseeable that human life would be endangered.
This assignment of error lacks merit.
Defendant’s conviction and sentence are AFFIRMED.

. In his assignments of error filed with the trial court defendant alleged seven errors. Only two of those were briefed and argued before this court. Assignments of error neither briefed nor argued are deemed abandoned and are not considered. State v. Buxton, 416 So.2d 71 (La.1982); State v. Rowe, 416 So.2d 87 (La.1982); State v. White, 446 So.2d 1317 (La.App. 2d Cir.1984).

. An arson investigator testified that the reason the gas tank did not explode is defendant stuffed the rag he used as a fuse into the filler pipe so tightly that air was shut off to the tank.