WARD, Judge.
The St. Bernard Parish Grand Jury indicted Bernard J. Del Carpió, charging him with the second degree murder of his wife. After pleading not guilty and not guilty by reason of insanity, Del Carpió waived trial by jury. The Trial Judge found Del Carpió guilty as charged and sentenced him to life imprisonment without benefit of parole, probation or suspension of sentence. Del Carpió appeals, claiming four errors in this trial warrant reversal of his conviction and sentence.
Trial testimony revealed the Del Carpió marriage was replete with physical and verbal abuse. Various family members and friends testified the Del Carpios were violent-tempered and fought frequently. Del Carpió stated that he and his wife had numerous “knock down, drag out fights” during which one or both usually sustained injury. He admitted a history of alcohol and drug abuse as well as a mental illness approximately four years prior to the killing.
In January 1987 Del Carpió temporarily relocated to New York living with his nephew’s family, the Bauers, while seeking employment. During this time Del Carpió made numerous unanswered late night and early morning telephone calls to his Mer-aux residence which aroused his suspicions that his wife was having an affair.
On February 27th Del Carpió received a call in New York from his wife informing him she was leaving him, because of their constant fighting. Surprised by this news, Del Carpió returned to Meraux on March 1st. Upon entering their Meraux home, *379 Del Carpió discovered his wife had abandoned the premises. Although he knew where his wife was employed, he did not contact her until March 5th, when he met her at her place of employment. The meeting was amicable. Later that night Del Carpió telephoned his wife and convinced her to deliver several of Del Carpio’s personal belongings to him the next day.
When she arrived at the former marital residence, Del Carpió was there waiting. An argument and fight ensued and Del Carpió slashed his wife’s throat with a knife.
An eleven year old neighborhood child witnessed Del Carpió attempting to put the bleeding victim into her car. The victim cried for help but her plea was stifled when Del Carpió forced her into the trunk of the car. A few moments later, Del Carpió placed the murder weapon, his blood soaked clothing, and a can of gasoline into the car trunk with his wife’s body.
Next, Del Carpió drove the car to his friend Johnny Powell’s house to enlist his aid in cleaning up “the mess” at the Del Carpió residence. He told Powell he had just killed his wife and was on his way to dispose of the evidence.
After leaving Powell, Del Carpió drove to a secluded area in Hopedale where he placed the body in Bayou La Loutre, set fire to the car and hitchhiked home.
The police arrived at Del Carpio’s residence the next morning at about 1:00 a.m. to execute a search warrant obtained pursuant to information provided by Powell. Del Carpió offered no resistence, confessed to the killing and was arrested. He then showed the police where he dumped the body and burned the car. Nine days later, the victim’s body was recovered from Breton Sound.
ASSIGNMENT NO. 1
Del Carpió argues the trial judge improperly restricted introduction of evidence establishing the victim’s violent character.
The defense was prepared to offer the testimony of Richard Fazzio describing a fight he witnessed between Del Carpió and the victim four years prior to the killing. The testimony was to substantiate Del Car-pio’s plea of self defense by showing he reasonably feared for his safety during the argument and fight preceding the killing. Sustaining the State’s objection, the judge ruled the incident too temporally remote to have probative value.
Before evidence of the victim’s dangerous character or of his threats against the accused may be admitted into evidence in support of a self defense plea, the accused must first produce evidence the victim made a hostile demonstration or overt act manifesting a present intent to kill or do great bodily harm to the accused at the time of the incident. La.R.S. 15:482; State v. King, 347 So.2d 1108 (La.1977). The statute allowing evidence of the victim’s violent character is strictly construed to avoid the possibility the evidence will be offered to serve improperly as a mere excuse for the killing under the pretext of showing aggression. State v. Chaisson, 425 So.2d 745, 750 (La.1983).
At the time the Fazzio testimony was offered, there was no evidence of a hostile or overt act by the victim. Neither in his confession nor direct testimony did Del Carpió claim he feared for his safety or that he killed the victim in self defense. During direct testimony he did say the victim took a knife from the kitchen counter; however, he further testified she did so only in response to his “grabbing” her to force a confession to an affair. Moreover, arresting officers testified there were no cuts, marks or other indications of any physical injury to Del Carpió which would lend support to his claim of self defense. Therefore, regardless of whether the Faz-zio testimony concerned an incident too remote to be probative, the testimony was properly excluded because of the failure to show an overt act by the victim.
Additionally, State v. Welcome, 458 So.2d 1235 (La.1983), cert. den. Welcome v. Louisiana, 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 152 (1985) held that the exclusion of evidence of the victim’s violent temper, fighting and record of arrest indicating violence which would merely be cumulative *380 to extensive trial testimony is harmless error. In view of substantial undisputed evidence in the record of the victim’s violent character, the Fazzio testimony would have been purely cumulative; hence, its exclusion was at worst harmless error. This assignment is without merit.
ASSIGNMENT NO. 2
In rebuttal, the State called the victim’s sister, Donna Calabresi, to testify regarding a telephone call received by the victim one week before her death. Calabresi testified that on February 28th, with the victim’s permission, she listened on an extension in the Del Carpió residence to a conversation between Cathy Bauer and the victim. Calabresi testified that Bauer told the victim: “Please hurry up and get out [of the house]. He [Del Carpió] is on his way home now to kill you.”
Del Carpió contends the judge committed reversible error by admitting into evidence statements obtained as a result of eavesdropping in violation of La.R.S. 14:322.1 and the “invasion of privacy” provision of Article 1, Section 5 of the Louisiana Constitution of 1974.
The Louisiana Supreme Court in Kirk v. State, 526 So.2d 223 (La.1988) has declared R.S. 14:322.1 unconstitutional.
Del Carpio’s claim that Calabresi’s testimony violated Article 1, Section 5 of the Louisiana constitution is also without merit. Del Carpió does not have an expectation of privacy in a conversation to which he was not a party. This assignment is meritless.
ASSIGNMENT NO. 3
Del Carpió argues trial court error in its denial of his motion for a post verdict judgment of acquittal or, in the alternative, his motion to modify the verdict to the lesser included offense of manslaughter.
When self defense is asserted, the State bears the burden of proving beyond a reasonable doubt that the killing was not justified. State v. Garcia, 483 So.2d 953 (La. 1986). The evidence negating self defense must be such that when viewed in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the killing was not done in self defense. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Matthews, 464 So.2d 298 (La.1985).
Del Carpio’s testimony leaves no doubt that he was the aggressor in the alteraction, his plea of self defense is groundless. The State met its burden of proof. The facts support the judge’s denial of a post verdict judgment of acquittal.
Concerning the motion to modify the verdict to a lesser included offense, La.R.S. 14:31(1) defines manslaughter as a homicide which would be either first or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. R.S. 14:31(1) also provides that provocation will not reduce a homicide to manslaughter if the fact finder determines the offender’s blood had actually cooled or that an average person’s blood would have cooled at the time the offense was committed.
Since “sudden passion” and “hot blood” are not elements of the crime but mitigating factors in the nature of a defense, the accused, not the State, bears the burden of proof. State v. Lombard, 486 So.2d 106 (La.1986). The defense has not met its burden. Although Del Carpió testified his suspicions of the victim’s affair were confirmed by her only moments before the slashing and thus he killed her in a rage, the State introduced evidence Del Carpió had known about the victim’s infidelity for approximately 2 months prior to the killing. In fact, while in New York in January 1987 Del Carpió spoke to the victim at her lover’s residence.
Mitigating factors were not proven by a preponderance of the evidence. Rather the evidence shows Del Carpió planned the murder, enticed his wife to the former matrimonial domicile, murdered her, and used the can of gasoline which he had purchased to destroy evidence of his crime. The evi *381 dence supports the conclusion that the verdict of second degree murder was appropriate. This assignment is without merit.
ASSIGNMENT NO. 4
Errors patent.
We have reviewed the record for errors patent and find none.
AFFIRMED.