STATE OF LOUISIANA      *      NO. 2023-KA-0717

VERSUS      *

     COURT OF APPEAL

DARRELL CLARK      *

     FOURTH CIRCUIT

     *

     STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 18-01999, DIVISION "E"
Honorable Eric A. Bopp,
* * * * * *
**Judge Rachael D. Johnson**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge
Rachael D. Johnson)

Kevin Vincent Boshea
ATTORNEY AT LAW
2955 Ridgelake Drive, Suite 207
Metairie, LA 70002

     COUNSEL FOR DEFENDANT/APPELLANT

Justin W. Stephens
Daniel J. Dysart
ST. BERNARD PARISH DISTRICT ATTORNEY'S OFFICE
1101 West St. Bernard Highway
Chalmette, LA 70043

     COUNSEL FOR STATE/APPELLEE

**AFFIRMED**
**June 10, 2024**

Defendant Darrell Clark ("Defendant") appeals his manslaughter conviction. Defendant asks this Court to reverse his conviction and order a new trial for three reasons: (i) the manslaughter verdict was contradictory to the evidence at trial; (ii) his right to a complete defense at trial was violated; (iii) and his sentence was illegally excessive. For the following reasons, we affirm Defendant's conviction.

## FACTUAL AND PROCEDURAL HISTORY

On February 19, 2018, Justin Price ("Mr. Price") was walking to his home at 3020 Maureen Lane in Meraux, Louisiana. He was walking home from a friend's house to retrieve a phone charger. At the same time, Defendant and Travis Umfrey ("Mr. Umfrey") were sitting in Mr. Umfrey's car, "rolling up" marijuana in front of Defendant's house, which is located on 2824 Maureen Lane. As Mr. Price was walking down the street, Defendant exited Mr. Umfrey's car. Defendant and Mr. Umfrey got into a confrontation, and Defendant stabbed Mr. Price four times. After Mr. Price fell to the ground, Defendant fled to the covered carport at his home. At Defendant's home, Defendant and Mr. Umfrey discussed the events that took place. Shortly after this conversation, Mr. Umfrey left the scene; and Defendant

went inside his house and hid in his bedroom closet. Mr. Price ultimately died from the stab wounds.

In June 2018, Defendant was charged by bill of indictment with second-degree murder in violation of La. R.S. 14:30.1. After several continuances, trial commenced on May 1, 2023, and lasted four days. During trial, the following witnesses testified: Defendant; Mr. Umfrey; Detective Ryan Melerine ("Detective Melerine"), lead detective in the investigation of the case at issue; Paul Berry ("Mr. Berry"), an expert witness in forensic DNA analysis; Dr. Mariana Sandomirsky ("Dr. Sandomirsky"), an expert witness in forensic pathology; Drake Rinkus ("Mr. Rinkus"), a fact witness; and Jacoby Bienemy ("Mr. Bienemy"), a fact witness. On May 3, 2023, Defendant also attempted to call Chazz Matlock ("Mr. Matlock") as a character witness. The trial judge sustained the State's objection to Mr. Matlock's testimony, and he was not allowed to testify.

Defendant testified that Mr. Price was a violent person. Defendant recalled that Mr. Price robbed him at gun point and had previously beat his friend, Mr. Matlock, with a baseball bat a few months prior to the incident at issue. Defendant further testified that on the night of the incident, he noticed that Mr. Price had brass knuckles and Mr. Price attacked Mr. Umfrey. Defendant stated that he grabbed a knife from the ground and stabbed Mr. Price multiple times in order to protect Mr. Umfrey. Defendant further stated that Mr. Price walked past both Defendant and Mr. Umfrey, claiming that he was going to come back with his friends. After Mr. Price left, Defendant went inside his house, turned off all the lights, and locked all the doors. Defendant denied that he and Mr. Umfrey talked shortly after the

2

incident and denied discussing the incident during any phone calls that he and Mr. Umfrey had together.

Mr. Umfrey, the State's key fact witness, testified that he observed the altercation between Defendant and Mr. Price. Mr. Umfrey testified that upon seeing Mr. Price, Defendant exited the vehicle and attacked Mr. Price. Mr. Umfrey described the altercation as a fist fight that escalated into Defendant stabbing Mr. Price. Mr. Umfrey never saw Mr. Price with brass knuckles and did not know how Defendant acquired the knife. Mr. Umfrey testified that he drove to Defendant's house and met Defendant at his carport after Mr. Price was stabbed. Mr. Umfrey testified that Defendant attempted to coerce him to lie to law enforcement. Specifically, Defendant wanted Mr. Umfrey to tell law enforcement that Mr. Price approached Defendant and Mr. Umfrey; that Mr. Price was the aggressor in this altercation; and that Mr. Price dropped the knife that Defendant ultimately used to kill him. Defendant also threatened Mr. Umfrey, saying that if he did not tell his version of events to law enforcement then he would stab him as well. Mr. Umfrey admitted that the statement he provided to Detective Melerine on the night of the murder was false, and after three months in custody, he decided to tell the truth about what happened. The second statement he made to the police, which was audio and video recorded, was played for the jury and corroborated most of his trial testimony.

Detective Melerine testified as to his involvement in the investigation of this case and his interview of Defendant. During his investigation of the crime scene, Detective Melerine observed that Mr. Price was bleeding profusely while lying in his driveway and noticed a blood splatter trail from Mr. Price's driveway to

3

Defendant's driveway. Upon learning of Defendant and Mr. Umfrey's involvement in the incident, Detective Melerine traveled to Defendant's residence and was given permission by Defendant's step-mother to search for him. Upon finding Defendant in his bedroom closet, Detective Melerine escorted him outside his residence, detained him, and then transported him to the detective bureau for a formal statement.[1] Detective Melerine obtained a search warrant for Defendant's residence, a tan colored van located on the perimeter of the murder scene, Mr. Umfrey's residence, and for Defendant's and Mr. Umfrey's cell phone records. He also obtained a DNA warrant for Defendant and Mr. Umfrey for the purpose of obtaining buccal swabs. Detective Melerine also reviewed video surveillance from a homeowner's residence that was located near the murder scene.

Detective Melerine testified that during questioning, with Defendant's step-mother present, he read Defendant his *Miranda* rights.[2] Defendant then admitted to Detective Melerine that he stabbed Mr. Price multiple times and provided several different versions of how he acquired the knife. Detective Melerine testified that he saw no evidence of defensive wounds on Defendant, but confirmed that brass knuckles were found in an empty lot near the crime scene.

Mr. Berry, the forensic DNA technical leader for the state police crime lab, testified regarding the set of brass knuckles found in the empty lot, the handle and blade of a knife, and a green t-shirt. This evidence, he explained, was tested for potential DNA and compared with reference to samples from Defendant, Mr.

---

[1] During this time, Defendant identified himself and stated that he was 16 years old. Upon transferring him to the detective bureau, Detective Melerine contacted defendant's step-mother and notified her that she could come to the detective bureau where they would be taking Defendant's statement.
[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Price, and Mr. Umfrey. Mr. Berry found that Defendant "could not be excluded as the donor of the DNA profile from the handle of the knife" and the blood located on the knife and brass knuckles were consistent with Mr. Price's DNA profile.

Dr. Sandomirsky testified regarding her review and interpretation of Mr. Price's autopsy report. She testified that Mr. Price was stabbed four times and that the manner in which he was stabbed reflected that he died at the hands of another.

Mr. Rinkus testified that before the stabbing of Mr. Price took place, Mr. Umfrey and Mr. Price disliked each other. Mr. Rinkus stated that he was with Mr. Price on the night Mr. Price was stabbed. Mr. Rinkus testified that before Mr. Price left for his phone charger, Mr. Price said that he was going to beat up Defendant and Mr. Umfrey. Mr. Rinkus also stated that he owned a pair of brass knuckles, but he noticed a few days after the incident that they were missing. He further testified that he never handed Mr. Price brass knuckles or a knife.

Mr. Bienemey testified to seeing Mr. Rinkus and Mr. Price at a convenience store on the night that Mr. Price was stabbed. He stated that as he saw them leave the store, he heard Mr. Price saying that "he was going to fight…."

The jury found Defendant guilty of manslaughter, a violation of La. R.S. 14:31; and he was sentenced to thirty-five years of hard labor. This appeal followed.

On appeal, Defendant assigns the following errors: (1) the guilty verdict of manslaughter is contrary to the evidence; (2) the defendant was denied the opportunity to present a complete defense at trial; and (3) the imposed sentence of thirty-five years at hard labor was unconstitutional, illegally excessive, and a

needless imposition of pain and suffering, thus the trial court erred in the denial of the motion to reconsider sentence. Our review of the record reveals no errors patent.

## DISCUSSION

### Manslaughter Verdict

Defendant first argues that the jury's verdict was irrational because the State presented insufficient evidence to sustain the manslaughter conviction. In particular, the State failed to prove that Defendant did not act in defense of others when he encountered Mr. Clark. When there is a claim of insufficiency of evidence in a self-defense case involving a homicide, "the question becomes whether, viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense or in the defense of others." *State v. Stockstill*, 2019-01235, pp. 4-5 (La. 10/1/20), 341 So. 3d 502, 506 (citing *State v. Matthews*, 464 So. 2d 298, 299 (La. 1985). This Court "must consider the record as a whole since that is what a rational trier of fact would do." *State v. Huckabay*, 2000-1082, p. 32 (La. App. 4 Cir. 2/6/02), 809 So. 2d 1093, 1111.

Defendant argues that under La. R.S. 14:22, Defendant committed a justifiable homicide because he was acting in defense of Mr. Umfrey. La. R.S. 14:22 provides that "[i]t is justifiable to use force or violence or to kill in the defense of another person when it is reasonably apparent that the person attacked could have justifiably used such means himself, and when it is reasonably believed that such intervention is necessary to protect the other person." Defendant testified that Mr. Price was the aggressor, and he was attacking Mr. Umfrey with brass

6

knuckles. Defendant asserts that it was reasonable to intervene to protect Mr. Umfrey. Defendant argues that if the jury was rational in their decision, they would have considered whether Mr. Umfrey was in danger of great bodily harm and whether Defendant reasonably believed that Mr. Umfrey was in danger of great bodily harm. Defendant contends that a rational jury should have come to the conclusion that Defendant's actions were justified under La. R.S. 14:22 because he was intervening to protect Mr. Umfrey. This assignment of error is not persuasive.

The record shows that Defendant was inconsistent when recounting the events leading up to the stabbing; there was physical evidence contradicting Defendant's statements; and Mr. Umfrey's testimony was in direct conflict with Defendant's testimony and initial statements. There were multiple inconsistencies between Defendant's initial statements and his trial testimony when describing what happened to Mr. Price. When asked how he acquired the knife, Defendant gave several different stories. At first, Defendant stated that he acquired the knife from Mr. Price himself. In his second version of events, Defendant stated that the knife was "just there"; and "[i]t just showed up". In his final version of events, he stated that he found the knife on the ground and just picked it up. In light of the different versions of how Defendant acquired the knife, it was reasonable for the jury to find the Defendant's testimony unreliable.

The physical evidence presented by the State contradicts the Defendant's testimony. In Defendant's initial testimony, he claimed that the confrontation took place next to the vehicle. However, physical evidence and blood from the altercation were thirty to fifty feet north of Mr. Umfrey's vehicle. Defendant's claim that Mr. Price had the knife before Defendant picked it up from the ground

7

was inconsistent with the DNA evidence. The DNA evidence showed Defendant's DNA profile on the handle of the knife instead of Mr. Price's.

Likewise, Mr. Umfrey's testimony directly conflicted with Defendant's testimony. Despite Defendant claiming that he fought Mr. Price to defend Mr. Umfrey, Mr. Umfrey contradicted this statement. Mr. Umfrey testified that Defendant was the aggressor, that he attacked Mr. Price first, and that he was not doing so in defense of Mr. Umfrey. Mr. Umfrey further testified that instead of the altercation happening around his vehicle, the altercation happened a few feet away from the car when Defendant exited Mr. Umfrey's vehicle and attacked Mr. Price as he was walking down the street.

In sum, it was reasonable for the jury to believe that Defendant was not defending Mr. Umfrey at the time of the altercation based on Defendant's inconsistent testimony, the physical evidence contradicting Defendant's testimony, and Mr. Umfrey's statements contradicting Defendant's testimony. Viewing the evidence in the light most favorable to the prosecution, the jury was rational in finding that the homicide was not committed in defense of Mr. Umfrey. This assignment of error is without merit.

### Denied Opportunity to Present Complete Defense

Defendant's second assignment of error is that he was denied the opportunity to present a complete defense at trial. During trial, Defendant attempted to call Mr. Matlock to corroborate that Mr. Price had previously beat up Mr. Matlock with a bat. Defendant argues that Mr. Matlock's testimony would have bolstered Defendant's defense of others claim because it would convey that his state of mind was reasonable during the night he and Mr. Price fought.

Defendant further argues that denying him the opportunity to call Mr. Matlock as a witness violated the Sixth Amendment of the United States Constitution and La. Const. art. I, §16. The Sixth Amendment of the United States Constitution states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

La. Const. art. I §16 states in relevant part:

> Every person charged with a crime is presumed innocent until proven guilty and is entitled to a speedy, public, and impartial trial in the parish where the offense or an element of the offense occurred, unless venue is changed in accordance with law. No person shall be compelled to give evidence against himself. An accused is entitled to confront and cross examine the witnesses against him, to compel the attendance of witnesses, to present a defense, and to testify in his own behalf.

Furthermore, the Louisiana Supreme Court has stated:

> A criminal defendant has the constitutional right to present a defense. U.S. Const. Amend. VI; La. Const. Art. 1 § 16; *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *State v. Gremillion,* 542 So.2d 1074 (La.1989); *State v. Vigee,* 518 So.2d 501 (La.1988). Due process affords a defendant the right of full confrontation and cross examination of the State's witnesses. *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *State v. Mosby,* 595 So.2d 1135 (La.1992). It is difficult to imagine rights more inextricably linked to our concept of a fair trial.

*State v. Van Winkle*, 1994-0947, p. 5 (La. 6/30/95), 658 So. 2d 198, 201-02.

Defendant also relies on *State v. Spivey*, which provides that a "defendant's knowledge of the assailant's bad character" is one of the factors to consider in determining whether a defendant has a reasonable belief that a killing was necessary. 38,243, p. 6 (La. App. 2 Cir. 5/12/04), 874 So. 2d 352, 357 (citing *State v. Hardeman*, 467 So. 2d 1163, 1171 (La. App. 2 Cir. 1985)). This assignment of error is without merit.

The record reflects that allowing Mr. Matlock to testify would have been cumulative. According to La. C.E. art. 403, "[relevant] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." "The trial judge is vested with wide discretion in determining the relevancy of evidence, and his ruling will not be disturbed on appeal in the absence of a clear showing of abuse of discretion." *State v. Miles*, 402 So. 2d 644, 647 (La. 1981) (citing *State v. Hathorn*, 395 So. 2d 783, 786 (La. 1981)). The trial judge sustained the objection to Mr. Matlock testifying because the Defendant opted to testify and to recount Mr. Matlock's story. Due to Defendant testifying to Mr. Price's violent action toward him, coupled with Mr. Price's previous violent action towards Mr. Matlock, Mr. Matlock's testimony would have been cumulative and would not have provided any probative value. *See, e.g., State v. Del Carpio*, 537 So. 2d 377, 379-80 (La. App. 4th Cir. 1988) (The inclusion of a witness testimony was seen as purely cumulative and at worst, harmless error because substantial evidence of the victim's violent character was already given.)

The trial court's ruling is further supported by La. C.E. art. 404(A)(2), which provides in pertinent part, "in the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of his dangerous character is not admissible." Besides Defendant's self-serving testimony, nothing was provided to support that Mr. Price committed a hostile demonstration or an overt act. Mr. Umfrey, who Defendant claimed he was defending from Mr. Price, testified that Defendant was the aggressor. With no evidence of an overt or hostile act, Mr. Matlock's testimony of Mr. Price's dangerous character is inadmissible. Lastly, we find that allowing Mr. Matlock's testimony would have been improper testimony to "specific acts committed by the victim against third [parties] is not admissible." *State v. Montz*, 92-2073 (La. App. 4 Cir. 2/11/1994), 632 So. 2d 822, 825; *See also State v. Wells*, 2011-0744, p. 20 (La. App. 4 Cir. 4/13/2016), 191 So. 3d 1127, 1143. Mr. Matlock, a third party, would be testifying about a specific act, him being previously beaten with a baseball bat by the victim, Mr. Price. There is no clear showing of abuse of discretion by the trial court; thus, we find that this assignment of error is without merit.

## Excessive Sentence

Defendant argues that his thirty-five year sentence in connection with his manslaughter conviction was illegally excessive and not warranted. In *State v. Smith,* this Court set forth the standard for evaluating an excessive sentence claim:

> Louisiana Constitution of 1974, art. I, § 20 provides, in pertinent part, that "[n]o *law* shall subject any person to ... *excessive ... punishment."* (Emphasis added.) Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. *State v. Sepulvado,* 367

11

So.2d 762, 767 (La.1979). A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. *State v. Bonanno,* 384 So.2d 355, 357 (La.1980). A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. *State v. Cann,* 471 So.2d 701, 703 (La.1985). On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. *State v. Walker,* [20]00–3200, p. 2 (La.10/12/01), 799 So.2d 461, 462; *cf. State v. Phillips,* [20]02–0737, p. 1 (La.11/15/02), 831 So.2d 905, 906.

*State v. Smith*, 2001-2574, pp. 6-7 (La. 1/14/03), 839 So. 2d 1, 4 (Emphasis in original).

"An appellate court reviewing a claim of excessive sentence must determine whether the trial court adequately complied with the statutory guidelines in La. C.Cr.P. art. 894.1, as well as whether the facts of the case warrant the sentence imposed." *State v. Williams*, 2022-0594, p. 23 (La. App. 4 Cir. 5/8/23), 367 So. 3d 785, 799 (citing *State v. Trepagnier*, 97-2427, p. 11 (La. App. 4 Cir. 9/15/99), 744 So. 2d 181, 189). According to *State v. Major*,

Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with [La. C.Cr.P. art.] 894.1. *State v. Lanclos*, 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D).

*State v. Major*, 96-1214, p. 10 (La. App. 4 Cir. 3/4/98), 708 So. 2d 813, 819.

Defendant argues that his sentence was not meaningfully tailored to either him or the particular offense. Furthermore, Defendant argues that the trial court

abused its discretion by not considering that Defendant was in defense of others and that a sentence of thirty-five years is inconsistent with these facts and circumstances. After reviewing the record, we find this assignment of error is without merit.

The trial judge followed the La. C.Cr.P. art. 894.1 guidelines and considered multiple aggravating circumstances in sentencing Defendant. The trial judge considered the following: (1) whether the Defendant showed remorse or lack thereof; (2) the intimate nature of the act of stabbing by the Defendant; and (3) subsequent alleged crimes for which Defendant was charged. For example, Defendant tried to coerce another inmate out of sight of cameras to attack him. The trial judge also considered the Defendant's age, physical build, demeanor, personal character, social background, family history, and lack of criminal record at the time of arrest as mitigating factors. The sentence of thirty-five years is five years less than the statutory maximum sentence for a conviction of manslaughter. La. R.S. 14:31(B). Given the trial judge complied with the guidelines of La. C.Cr.P. art. 894.1 when determining Defendant's sentence, along with the record showing a factual basis for the sentence imposed, the thirty-five year sentence is not grossly disproportionate to the offense nor does it seem to cause needless infliction of pain and suffering. We find that the trial judge did not abuse its discretion, and this issue is without merit.

## DECREE

For the forgoing reasons, we affirm the Defendant's manslaughter conviction and thirty-five year sentence.

**AFFIRMED**

13