DOWNING, J.
 

 12Pefendant, Aaron Bernard, was charged by grand jury indictment with two counts of aggravated rape, violations of La. R.S. 14:42; one count of distribution of cocaine to a person under eighteen years of age, a violation of La. R.S. 40:967 and 981; and one count of false imprisonment with a dangerous weapon, a violation of La. R.S. 14:46.1.
 

 Defendant entered a plea of not guilty and filed a pretrial motion to suppress a statement made to Rose Marie Collins
 

 [1]
 

 an employee of the Office of Community Services (OCS). In his motion to suppress, defendant argues the statements made to Collins were obtained without his being advised of his rights. After taking the matter under advisement following the hearing on the motion to suppress, the trial court granted the motion.
 

 The State filed a writ application with this Court to review the trial court’s ruling on the motion to suppress, and defendant filed a response. On August 29, 2008, this Court issued an interim order directing the trial court to submit a
 
 per curiam
 
 on the issues of whether defendant was “in custody” when he gave statements to a child caseworker and whether a community services agent was a “state actor” who had a duty to administer
 
 Miranda
 
 warnings.
 

 In
 
 State v. Bernard,
 
 2008 KW 1372 (La. App. 1st Cir.10/9/08) (unpublished), this Court denied the State’s writ application. The State then filed a supervisory writ application with the Supreme Court. In
 
 State v. Bernard,
 
 2008-2569 (La.12/12/08), 997 So.2d 552, the Supreme Court granted the State’s writ application and remanded the matter to this Court for briefing and argument.
 

 FACTS
 

 On September 5, 2006, defendant was arrested and charged with aggravated rape and false imprisonment with a dangerous weapon. The alleged victim is |3eleven-year-old F.H. At the time of the incident at issue, Collins was an investigator with the Child Protection Office of OCS. On September 22, 2006, Collins met with defendant at the East Baton Rouge Parish Prison, where defendant had been incarcerated since September 5, 2006. Collins arranged to meet with defendant because OCS received a report of possible abuse or neglect of the children living at
 
 *613
 
 defendant’s residence. The focus of the OCS investigation was defendant’s girlfriend, who was the mother of all the children in the residence. Defendant was the father of the youngest child in the residence. Collins explained that OCS policy was to interview everyone in the home with regard to what took place in the home.
 

 During her testimony at the motion-to-suppress hearing, Collins stated she was aware of an incident that took place in defendant’s home on September 5, 2006, and this was the incident she was investigating with respect to the children in the house. On cross-examination, Collins explained that this matter was referred to OCS through a call into the agency’s twenty-four-hour hotline.
 

 Collins testified that prior to speaking with defendant, she had not reviewed any police reports pertaining to the criminal investigation, nor had she spoken to any of the investigating officers. Collins further testified that she was not a party to the September 5, 2006 interview of defendant by law enforcement.
 

 According to Collins, she was not conducting a criminal investigation of the events of September 5, 2006, nor did she contact anyone in law enforcement prior to her interview of defendant. Upon leaving Parish Prison, Collins never contacted any law enforcement personnel to advise them of the interview. She stated, however, that she was required to report the investigation to the D.A.’s office, which she apparently did.
 

 When Collins arrived at Parish Prison, she waited for defendant to be brought into a holding cell. When defendant was brought in, she introduced Rherself, providing defendant with her name and title. Collins testified she explained to defendant that OCS was conducting an investigation with regard to his girlfriend and the well-being of her children. Collins further explained that OCS received a report of possible abuse or neglect and that because defendant was the father of the youngest child and a member of the household, OCS wanted to interview him with regard to the daily activities of the home. Collins informed defendant that he had a right not to speak with her if he chose and that if he did not wish to speak with her, she would leave.
 

 After explaining to defendant that she was investigating Claudia, defendant expressed that Claudia was a “good mother,” and stated had he not been under the influence of cocaine, the incident with F.H. would not have happened. According to Collins, defendant’s demeanor was very nice and articulate, and he spoke clearly. Collins testified that she did not threaten, promise, or induce defendant in an effort to get him to speak with her. Collins did not question defendant about the criminal investigation or charges against him. Collins indicated she spent approximately ten minutes with defendant.
 

 Collins did not provide
 
 Miranda
 
 warnings to defendant and stated she had not been trained in such warnings. According to Collins, administering
 
 Miranda
 
 warnings is not part of her responsibility based on OCS protocol.
 

 Collins acknowledged that she is required by law to report her investigative findings to the juvenile division of the district attorney’s office, which would determine if that office wanted to pursue further action. Collins testified that she did not forward her report to the specific law enforcement agency investigating the criminal charges against defendant. The focus of the OCS investigation that Collins was conducting was whether the children residing in defendant’s home should be adjudicated “children in need of care.”
 

 
 *614
 
 According to Collins, this is not a criminal proceeding, but a civil action whereby a juvenile court judge determines [ .^whether the children will remain in parental custody or will be removed. Collins further testified that OCS just supplies information and does not use its findings to tell the district attorney or law enforcement whom to arrest.
 

 ISSUES RAISED BY THE STATE
 

 1. The lower court erred in finding that defendant was “in custody” when Collins spoke with defendant at the East Baton Rouge Parish Prison. More specifically, the lower court erred by failing to apply the well-established totality test that governs all custody determinations.
 

 2. The lower court erred in determining that Collins needed to issue defendant
 
 Miranda
 
 warnings before conducting her investigation. More specifically, the lower court erred by finding that being a “state actor” is all that is necessary before one must give
 
 Miranda
 
 warnings to a defendant.
 

 DISCUSSION
 

 When reviewing a trial court’s ruling on a motion to suppress based on findings of fact, great weight is placed on the trial court’s determination because the court has the opportunity to observe the witnesses and weigh the relative credibility of their testimony. Appellate courts will not set a credibility determination aside unless it is clearly contrary to the record evidence. But the legal findings of the trial court on a motion to suppress are subject to review without the great deference standard attached to credibility determinations.
 
 State v. Peterson,
 
 2003-1806, p. 9 (La.App. 1st Cir.12/31/03), 868 So.2d 786, 792,
 
 writ denied,
 
 2004-0317 (La.9/3/04), 882 So.2d 606.
 

 In
 
 Miranda v. Arizona,
 
 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), the United States Supreme Court set forth the doctrine that the prosecution may not use a statement, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. These safeguards, commonly known as the
 
 Miranda
 
 warnings, are as follows: Prior to any questioning, the person must be warned that he has a right [ rito remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.
 
 Id.
 

 Miranda
 
 warnings are applicable only when it is established that the defendant has been subject to a “custodial interrogation.”
 
 Id.
 
 The Louisiana Supreme Court has reiterated that
 
 Miranda
 
 only applies where the party performing the “interrogation” is a “state actor.”
 
 State v. Maise,
 
 2000-1158, p. 10 (La.1/15/02), 805 So.2d 1141, 1149.
 

 Custodial Interrogation
 

 In the State’s first issue, it argued the trial court erred in finding defendant was in custody when Collins spoke to him at the East Baton Rouge Parish Prison.
 

 In
 
 Miranda,
 
 the Supreme Court defined “custodial interrogation” as “questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.” 384 U.S. at 444, 86 S.Ct. at 1612.
 

 In
 
 Mathis v. United States,
 
 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), the Supreme Court addressed a case where a defendant, while incarcerated in state jail, was questioned by an internal revenue agent as to whether he had prepared a
 
 *615
 
 specific tax return. The defendant also consented to extend the statute of limitations on the tax return at issue. Following the investigation conducted by the internal revenue agent, defendant was charged and convicted of filing false claims based on the tax return at issue. On appeal, defendant argued the internal revenue agent should have warned him that any evidence he gave the government could be used against him. The government contended that defendant was not “in custody” in connection with the matter being investigated by the internal revenue agent, thus there was no need for the agent to administer
 
 Miranda
 
 warnings.
 
 Mathis,
 
 391 U.S. at 4, 88 S.Ct. at 1504-05.
 

 |7The Supreme Court declined to recognize a distinction regarding the basis of the defendant’s incarceration and the basis of the government’s investigation. In so holding, the court noted that nothing in
 
 Miranda
 
 called for a curtailment of the warnings to be given persons under investigation by officers based on the reason why the person is in custody.
 
 Id.
 
 391 U.S. at 4-5, 88 S.Ct. at 1505. The Supreme Court quoted from
 
 Miranda,
 
 to emphasize this point:
 

 “To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized.”
 
 [Miranda v. Arizona],
 
 384 U.S., at 478, 86 S.Ct., at 1630.
 

 Mathis,
 
 391 U.S. at 5, 88 S.Ct. at 1505.
 

 In the present case, defendant’s incarceration in the East Baton Rouge Parish Prison clearly qualifies him as being “in custody.” We are not persuaded by the State’s urging that recent case law allows for a “totality of the circumstances” application. None of the cases cited by the State involve a situation wherein a defendant was questioned following his arrest and incarceration.
 
 [2]
 
 Given this important factual distinction, there is no need to examine the totality of the circumstances surrounding defendant’s interview with Collins. Accordingly, we cannot say the trial court erred in determining that defendant was “in custody” when Collins interviewed him.
 

 State Actor
 

 The State also argues the trial court erred in finding that as an OCS worker Collins was a “state actor.”
 

 |sThe Louisiana Supreme Court in
 
 State v. Maise,
 
 2000-1158, at pp. 10-11, 805 So.2d at 1149, determined that a Jefferson Parish probation officer was a “state actor,” by using the following analysis:
 

 In
 
 West v. Atkins,
 
 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), the United States Supreme court defined state action as “the deprivation caused by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible,” and “the party charged with the deprivation must be a person who may fairly be said to be a state actor.” The Court further stated that “[Sjtate employment is generally sufficient to render the party a state actor.”
 
 Id.
 
 at 47,
 
 *616
 
 108 S.Ct. 2250. In the instant case, the statement was made to a Jefferson Parish probation officer, an agency of the state. Therefore, the probation officer was a “state actor.
 

 In
 
 Mathis v. United States,
 
 the U.S. Supreme Court analyzed whether the internal revenue agent who interviewed a defendant in jail was required to give
 
 Miranda
 
 warnings before speaking with him. The Court found the internal revenue agent was required to issue such warnings before speaking to defendant (who was incarcerated). In so finding, the Court noted that although the internal revenue agent was conducting a “routine tax investigation,” which usually invokes civil enforcement, there are types of tax investigations that frequently lead to criminal prosecutions.
 
 Mathis,
 
 391 U.S. at 4, 88 S.Ct. at 1505.
 

 Using the guidance provided by the
 
 Mathis
 
 and
 
 Maise
 
 courts, we note that Collins was employed by OCS, a state agency, and that Collins was required by law to report her investigative findings to the juvenile division of the District Attorney’s Office. Collins testified that defendant’s girlfriend treatment of the children was the main focus of the investigation, and the information she gathered could be utilized in a civil proceeding where the children would be adjudicated “children in need of care.” However, Collins’s own testimony indicated that she was investigating allegations of abuse and neglect of the children. Information regarding allegations of child abuse, which she was required to turn over to the | aD.A., is material in both civil proceedings under the Children’s Code and in criminal prosecutions.
 

 Accordingly, we conclude the trial court did not abuse its discretion in determining Collins was a “state actor.” Under these circumstances, we find the trial court’s ruling granting defendant s motion to suppress his statements to Collins to be proper. In this situation, Collins should have informed defendant of his
 
 Miranda
 
 rights prior to questioning him about the allegations of abuse and neglect of the children in the household he shared with them.
 

 DECREE
 

 For the foregoing reasons, we affirm the trial court’s ruling granting the defendant’s motion to suppress statements.
 

 TRIAL COURT’S RULING GRANTING DEPENDANT’S MOTION TO SUPPRESS STATEMENTS AFFIRMED.
 

 [1]
 

 . Rose Marie Collins is sometimes referred to in the record as Rosemarice Collins.
 

 [2]
 

 . In brief, the State argues that the cases of
 
 Stansbury v. California,
 
 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (per curiam), and
 
 Thompson v. Keohane,
 
 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995), have created a "line of caselaw concerning the definition of custody,” and "any portion of
 
 Mathis
 
 that is inconsistent with the current totality test may no longer be considered good law.” We disagree. In
 
 Stansbury,
 
 the defendant was questioned at a police station prior to being arrested for any crime, and in
 
 Thompson,
 
 the defendant was questioned pri- or to his arrest at a state trooper headquarters.