KNOLL, J.*
|! This criminal writ concerns the issue of whether a child protection officer should have given “Miranda” warnings to the arrested and incarcerated defendant, Aaron Bernard, before she interviewed him. This problematic issue was raised by de *1027 fendant in his pretrial motion to suppress certain incriminatory statements he made to Rosemarice Collins, a child protection officer with the Louisiana Office of Community Services (“OCS”), based on her failure to advise him of his Constitutional rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We are called upon to weigh the delicate balance between the Constitutional rights of a defendant who has been taken into custody and the interest of both the State and the OCS in interrogating suspected child abusers.
While defendant was in prison awaiting trial,[1] Collins interviewed him as part of an investigation of child abuse or neglect directed at his live-in girlfriend, Claudia. During the interview, which lasted approximately ten minutes, defendant admitted to | gCollins he had used cocaine. Defendant moved to suppress this inculpatory statement based on Collins’ failure to advise him of his Miranda rights. The trial court granted the motion to suppress and the Court of Appeal affirmed. We granted the State’s application for supervisory writ[2] and now reverse. For the reasons detailed below, we find there is no bright line rule for this determination, which must be made on a case-by-case basis. Under the circumstances of this case, the record evidence shows Collins was not acting as an “agent of law enforcement,” and was not required to advise defendant of his Miranda rights prior to the interview.
FACTS AND PROCEDURAL HISTORY
Defendant shares a house in East Baton Rouge Parish with his girlfriend Claudia, her eleven year old daughter F.H., and defendant and Claudia’s young son. The state alleges on September 5, 2006, defendant took Claudia and F.H. hostage after ingesting a large amount of cocaine. Defendant was arrested later that day after a lengthy standoff with the police.
At the end of the standoff, defendant injured himself in an apparent suicide attempt. He was taken to Earl K. Long Hospital and treated for his injuries, then brought to a nearby police station. The police read the Miranda rights and began an interrogation. Defendant gave a videotaped statement confessing to giving F.H. cocaine and engaging in oral and anal sex with her.[3] Bond was set at $400,000, and he was brought to East Baton Rouge Parish Prison to await trial.
On September 22, 2006, Rosemarice Collins, an investigator for the child | ^protection office of the Louisiana Office of Community Services (OCS), visited defendant in prison. Collins’ office had received an anonymous call to its hotline regarding possible child abuse at defendant’s household.[4] Collins first inter *1028 viewed defendant’s girlfriend Claudia and her children, who informed her that defendant was also a member of the household. It is OCS policy to interview each member of the household in cases of alleged child abuse or neglect.
Collins testified the purpose of her interview with defendant was solely to determine whether action should be taken against Claudia, including possible termination of her parental rights. Collins’ investigation was not directed at the criminal charges levied against defendant. Prior to the interview, Collins had not discussed defendant’s case with the investigating officers or anyone at the District Attorney’s office, nor did she read the police report regarding the September 5, 2006 incident. Significantly, Collins did not have any personal contact with police or prosecutors prior to the date of the interview.
Collins introduced herself and said she was conducting an investigation as to Claudia’s fitness as a parent. Collins did not give defendant Miranda warnings prior to speaking with him, as it was not her department’s practice to do so. Collins had never received any instruction regarding the Miranda rights. She did say the interview was voluntary and she would leave if he did not wish to speak to her. Defendant chose to answer her questions. During the interview he defended Claudia’s fitness as a parent and said the alleged incidence of abuse (i.e., the events of September 5th) resulted solely from his own cocaine abuse.
hCollins drafted a report, the primary purpose of which was to give a recommendation regarding whether Claudia’s children were “children in need of care” and whether Claudia’s parental rights should be terminated.[5] The report included defendant’s admission he had used cocaine. Collins was required by law to submit a copy of her report to the juvenile division of the East Baton Rouge Parish District Attorney’s office. The juvenile division apparently passed it on to the criminal division and the attorneys prosecuting defendant. Collins never forwarded her report to the police, and she was not contacted by either the police or the District Attorney’s office to conduct a follow-up investigation.
PROCEDURAL HISTORY
Defendant moved to suppress the contents of Collins’ report. Collins was the sole witness to testify at the hearing. The trial court granted the motion, finding that because Collins was an “agent of the Sate of Louisiana” and defendant was “in custody,” the Miranda rights should have been read prior to questioning.
The State applied for a supervisory writ, which was denied by the First Circuit Court of Appeals. This Court granted the State’s writ in State v. Bernard, 2008-2569 (La.12/12/08), 997 So.2d 552, and remanded to the First Circuit for briefing and argument.
*1029 15The First Circuit affirmed, holding “defendant’s incarceration in the East Baton Rouge Parish Prison clearly qualified him as being ‘in custody’ ” and that the “trial court did not abuse its discretion in determining Collins was a ‘state actor.’ ” State v. Bernard, 2008-1372 (La.App. 1 Cir. 5/8/09) 13 So.3d 611.
DISCUSSION
The sole issue in dispute is whether defendant’s Constitutional right against compelled self-incrimination was violated when Collins did not read him his Miranda rights prior to their meeting. This issue hinges on two deceptively simple-sounding questions: who is required to give Miranda warnings, and in what circumstances are they required to give them?
This discussion necessarily starts with the central holding of Miranda itself:
Our holding will be spelled out with some specificity in the pages which follow, but, briefly stated, it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by laiv enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.
Miranda, 384 U.S. at 444, 86 S.Ct. 1602(emphasis added).
As this passage makes clear, Miranda only applies if three conditions are met: (1) the defendant is in “custody” or significantly deprived of freedom, (2) there is an “interrogation,” and (3) the interrogation is conducted by a “law enforcement officer” or someone acting as their agent. After our careful review of the record, we And Collins was not acting as a law enforcement officer or as an agent of law enforcement, thus defendant’s Constitutional rights under Miranda were not triggered prior to Collins’ interview.
|f;A- Miranda vis-d-vis State Employees
Defendant argues that, pursuant to State v. Maise, 2000-1141 (La.1/15/02) 805 So.2d 1141, all “state actors” who interview or interrogate a suspect must give Miranda warnings. Defendant further argues state employment is.“generally sufficient to render the party a state actor.” Maise, 805 So.2d at 1149.
In Maise, the defendant called a probation officer on the phone and confessed to raping a child. Id. at 1148. The defendant moved to suppress his confession based on the probation officer’s failure to advise him of his rights. Defendant relies on this passage from Maise: “Miranda only applies where the party performing the ‘interrogation’ is a ‘state actor.’ ” Id. at 1149, citing State v. Martin, 94-252 (La.App. 5 Cir. 10/12/94) 645 So.2d 752. The court went on to say “[SJtate employment is generally sufficient to render a party a state actor.” Id. at 1149, quoting West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). We find that Maise is not controlling for two reasons.
First, the passage in Maise regarding “state actors” is obiter dicta and therefore not binding. This Court resolved Maise by holding that a conversation over the telephone does not constitute a “custodial interrogation,” as there is no restraint on the defendant’s freedom of movement. Id. at 1149-50. Because this finding was dis-positive of defendant’s Miranda claim, it was not necessary to determine whether the probation officer was a “state actor” or *1030 “law enforcement agent,” and that discussion was mere surplusage.
Second, Maise's reliance on West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) was imprecise at best, as that case is entirely unrelated to Miranda, and the Fifth Amendment. In West v. Atkins, a prisoner brought a claim under 42 U.S.C. § 1983 against a prison doctor who allegedly gave him inadequate medical care. 42 U.S.C. § 1983 permits an aggrieved party to bring a claim against |7any person acting “under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia.” The U.S. Supreme Court held that, under section 1983, “[S]tate employment is generally sufficient to render the defendant a state actor.” Id. at 49, 108 S.Ct. 2250, quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 931-932 n. 18, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). While this is an accurate statement of law for the purposes of 42 U.S.C. § 1983, there is a significant distinction between the broad definition of “state actor” under section 1983 and the significantly narrower group of “law enforcement officers” referenced in Miranda. Therefore, to the extent that our decision in Maise conflicts with our holding in the case before us, Maise is overruled.
The defendant’s reliance on Mathis v. U.S., 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968) is likewise misplaced. In Mathis, the defendant challenged inculpatory statements regarding his tax returns he made to an IRS employee while in prison for a separate offense. Id. at 4, 88 S.Ct. 1503. The prosecution forwarded two arguments why Miranda should not apply: “(1) that these questions were asked as a part of a routine tax investigation, where no criminal proceedings might even be brought, and (2) that the petitioner had not been put in jail by the officers questioning him, but was there for an entirely separate offense.” Id. at 4, 88 S.Ct. 1503. The central question in Mathis was whether the defendant was “in custody” — the Supreme Court was not called upon to decide whether the IRS employee was a “law enforcement agent,” as the government apparently ceded that point. Mathis is simply not controlling on this issue.
Defendant also cites to State v. Martin, 94-252 (La.App. 5 Cir. 10/12/94) 645 So.2d 752, which held “if a state actor is involved, defendant must be advised of his Miranda rights prior to making a statement.” Id. at 754, citing State v. Perry, 502 So.2d 543 (La.1986). In Martin, defendant confessed to a private security guard hired |sby the convenience store where she worked. Id. at 753. Miranda does not apply to private citizens such as the hired security guard, who have no connection to the state and are not acting as agents of law enforcement officials. To that extent, Martin remains good law. However, Martin does not stand for the proposition that state employment, standing alone, brings Miranda into play. As the State accurately notes, there are many state employees whose jobs have nothing to do with criminal law enforcement. Miranda does not require every state employee, from the governor to the groundskeeper, to be well-versed in Fifth and Sixth Amendment law. This interpretation would be an absurd expansion of the well-intended Constitutional benefits protecting a defendant from coercive interrogation by law enforcement. Clearly, this is not what Miranda stands for.
Finally, the application of Miranda to all government employees is simply overly broad and inconsistent with the type of wrongs it was intended to prevent. Miranda is meant “to vest a suspect in custody with an added measure of protection against coercive police practices.” Rhode *1031 Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980)(emphasis added). This rationale simply does not apply where the “interrogation” is conducted without coercion and with no involvement from the police.
B. Miranda vis-a-vis Laiv Enforcement
Although no prior decision of this Court has explicitly set forth who is required to give Miranda warnings, we have consistently declined to apply Miranda in cases where the interrogator is neither a law enforcement official nor acting as an agent of law enforcement. This policy is reflected in a trio of decisions from the 1980s: State v. Hathorn, 395 So.2d 783 (La.1981), State v. Phillips, 444 So.2d 1196 (La.1984), and State v. Perry, 502 So.2d 543 (La.1986)
la State v. Hathorn, 395 So.2d 783 (La.1981) is perhaps more closely factually on point than any other reported Louisiana decision. In Hathom, the defendant poisoned her children and herself. While in the emergency room, a caseworker with the Child Protection Center interviewed the defendant, who admitted to poisoning her children. Id. at 784. Defendant later moved to suppress these statements based on the caseworker’s failure to give Miranda warnings. The trial court denied the motion to suppress, and this Court affirmed:
In the instant case, defendant had not been placed under arrest at the time of her interview with LeBlanc. Nor was LeBlanc a law enforcement officer with powers of arrest. Clearly, no Miranda warnings were required, as defendant’s statements were made in a noncustodial situation and defendant was not being subjected to interrogation by a police officer. Moreover, the record affirmatively shows that the noncustodial incul-patory statements were freely and voluntarily made. Hence, the trial judge did not err in admitting the statements in evidence.
Id. at 785.
Although Hathorn focused on whether the interrogator is a “law enforcement officer” with the “power to arrest,” later decisions have made clear Miranda is not necessarily limited solely to active law enforcement officers.
In State v. Phillips, 444 So.2d 1196 (La.1984), the defendant, after being arrested and advised of his Miranda rights, exercised his right to remain silent and the interrogation ceased. Phillip’s employers, Faucheaux and Brooks, later came to visit him in jail. Because they believed Phillips was innocent, they recommended he waive his right to remain silent and tell the police everything he knew. Id. at 1198. To Faucheaux and Brooks’ surprise, Phillips confessed to armed robbery. Fau-cheaux worked part-time as an unpaid reserve police officer, and his duties included helping with crowd control at events and directing traffic. Id. at 1199 n. 6. Defendant argued | inFaucheaux was an agent of law enforcement under Miranda. This Court rejected that argument, and held:
Although Simmons places great emphasis on Faucheaux’s status as a volunteer reserve police officer, that fact is not of controlling significance. When Faucheaux and Brooks (who had no connection, volunteer or otherwise, with the police) encouraged Simmons to cooperate, they did so not as agents of the investigating officers, but rather as business associates who were acting in what they believed to be Simmons’ best interest. Thus, this case does not involve a “team effort” to break Simmons’ will to *1032 resist his interrogators’ entreaties to make a statement.
Id. at 1199.
Phillips contains a somewhat broader test than Hathom, as the Phillips court did not merely consider whether Fau-cheaux and Brooks were actual law enforcement officers with powers of arrest. Significantly, Phillips focused on whether they were acting as “agents” of the investigating officers and working as part of a “team effort” to interrogate the defendant.
This test is set out even more clearly in State v. Penny, 502 So.2d 543 (La.1986). Perry’s aunt Zula Lyon visited him several times while he was incarcerated. During those visits, he confessed to five murders and gave his aunt a sheet of paper with the victims’ names written on it. Id. at 553. Lyon turned this information over to the police. Defendant contended “Mrs. Lyon served as an agent of the sheriffs office” during her visits and was therefore required to give Miranda warnings. Id. The trial court ruled the testimony admissible, and this Court affirmed.
The focus of the court’s analysis was whether Lyon was working as an “agent” of the police officers — whether the police had sent her to talk with the defendant in order to interrogate him in their stead:
It is evident from Mrs. Lyon’s testimony she had motives in visiting defendant other than to solicit |ninformation for the sheriff. While she admitted she had asked defendant questions about the murders on some of her visits, she specifically stated she had not questioned him on September 16, 1983. The purpose of her visit on that date was to bring winter clothing to defendant in preparation for his transfer to the Feli-ciana Forensic Facility. She also expressly stated, she had never been asked to question defendant.
Similarly, the reason for her visit on September 30, 1983 was to visit him one more time before defendant left for Feli-ciana Forensic Facility, to see what his state of mind was and to see if he was in need of anything. It is clear Mrs. Lyon did not question him on that date. According to her testimony, the statement on that date was volunteered by defendant as Mrs. Lyon was getting ready to leave.
Defendant alleges Mrs. Lyon received special treatment from the sheriffs office, implying this would not have been the case had she not been eliciting information with the intention of relaying it to the sheriff. While it is true on some of her visits to defendant Mrs. Lyon talked with him in the sheriffs office, her testimony also makes it clear she did on some occasions see him in his jail cell in solitary confinement. Also, although she admitted she talked with the deputies a number of times about the case, she maintained they never asked her what defendant had said to her.
From Mrs. Lyon’s testimony, it does not appear she was acting on behalf of the sheriff’s office when she visited defendant and, talked with him about the envies. In particular, it should be noted neither statement was the result of questioning by her and both statements were instead unsolicited, spontaneous confessions of guilt.
Id. at 553 (emphasis added).
Hathorn, Perry and Phillips, when read together, clearly establish Miranda applies not to all “state actors” but only to persons who are either law enforcement officers or acting as an agent of law enforcement.
 We recognize this area of the law is potentially problematic. We further recognize this Court has not given the lower courts clear guidance as to an ap *1033 plied standard. We now do so. After studying the cases concerning this issue, we clearly |12and quickly see the proper resolution of this issue is a fact-driven determination. Simply stated, one size does not fit all; there is no bright line rule to be applied. Each case must be decided under its own set of facts. Trial courts will have to consider the unique circumstances of each case and balance the defendant’s Miranda rights against both the necessity for a child protection officer to obtain a complete and clear record of the alleged child abuse or neglect and the Constitutional rights of a defendant who has been taken into custody.
C. Miranda vis-á-vis Child Protection Officers
Defendant argues the case of State v. Saltzman, 2002-1350 (La.App. 3 Cir.2003), 843 So.2d 1206, rev’d on other grounds, 871 So.2d 1087 (per curiam), establishes a rule that, as a matter of law, OCS agents conducting investigations are agents of law enforcement for the purposes of Miranda,[6] This is a misreading of Saltzman. The appellate court in Saltzman did not establish a per se rule, but applied a totality of the circumstances test in finding, as a matter of fact, the OCS agent was acting as an agent of law enforcement.
Saltzman, like defendant in the case sub judice, was charged with aggravated rape of his minor stepdaughters. Martin Caeser, a child protection investigator, interviewed the defendant without giving Miranda warnings and elicited incriminating statements. Id. at 1208. Also present at the interview was Detective Michael Pri-meaux. As soon as Caeser finished his interview, Detective Primeaux read defendant the Miranda rights and conducted his own interrogation. The appellate court held under these facts, Caeser was acting as an agent of law enforcement:
| iSMr. Ceasar filed a report at the police station, reviewed the interviews of the children with Detective Primeaux and told Detective Primeaux that he would be interviewing the Defendant the next day. Detective Primeaux was present for the interview and took notes. Certainly, Mr. Ceasar knew that the statements he was eliciting from the defendant could be used by Detective Pri-meaux to arrest the defendant.
Id. at 1211.
The court's findings were essentially factual in nature. The OCS agent filed a report directly with the police, talked with the police about the case prior to interviewing the defendant, told police when and where he would be interviewing the defendant, and interviewed the defendant in the presence of the detective in charge of the investigation. It can be discerned he was acting as a law enforcement agent. The precise factual circumstances in Saltz-man are not involved in the case presently before us, nor do we pass judgment on whether that court’s factual findings were correct. We discuss it here merely to emphasize whether someone is acting as an agent of law enforcement is dependent upon the unique circumstances of each case. As we now state, this determination is fact-driven and can vary widely on a case by case basis.
To further illustrate our discussion, we find it appropriate to mention an interesting Texas case concerning similar facts as here and that court’s treatment of the central issue before us. Wilkerson v. *1034 State, 173 S.W.3d 521 (Tex.Crim.App.2005), concerned the subject of both a criminal investigation and a separate investigation by the Texas Department of Child Protective Services (“CPS”). The Texas CPS investigator, like Collins, was a state employee who questioned family members in cases of suspected child abuse. She was bound by law to forward her reports to the police. Id. at 525 n. 5.
114The defendant argued, as a matter of law, CPS investigators are law enforcement agents under Miranda. The court rejected this contention, as a CPS worker’s primary job is not to gather evidence for the prosecution of criminal cases: “Their mission is to protect the welfare and safety of children in the community. Although this duty may at times entail the investigation of child abuse claims, that alone does not transform CPS workers into law enforcement officers or their agents.” Id. at 528. Instead, courts must make a case-by-case finding and review the “entire record” to determine whether a CPS worker is acting as a law enforcement agent in each particular case. Id. at 530. The Wilkerson court set forth a lengthy series of factors for lower courts to consider:
First, courts should look for information about the relationship between the police and the potential police agent. Did the police know the interviewer was going to speak with the defendant? Did the police arrange the meeting? Were the police present during the interview? Did they provide the interviewer with the questions to ask? Did they give the interviewer implicit or explicit instructions to get certain information from the defendant? Was there a “calculated practice” between the police and the interviewer that was likely to evoke an incriminating response from defendant during the interview? And finally, does the record show that the police were using the agent’s interview to accomplish what they could not lawfully accomplish themselves? In sum, was law enforcement attempting to use the interviewer as its anointed agent?
Second, courts should examine the record concerning the interviewer’s actions and perceptions: What was the interviewer’s primary reason for questioning the person? Were the questions aimed at gaining information and evidence for a criminal prosecution, or were they related to some other goal? How did the interviewer become involved in the case? Did the interviewer help “build a case” that led to the person’s arrest, or was the interviewer pursuing some other goal or performing some other duty? At whose request did the interviewer question the arrestee? In sum, did the interviewer believe that he was acting as an agent of law enforcement?
11fiFinaIly, courts should examine the record for evidence of the defendant’s perceptions of the encounter. When the defendant was interviewed, did he believe that he was speaking with a law-enforcement agent, someone cloaked with the actual or apparent authority of the police? What gave him this impression? Alternatively, would a reasonable person in defendant’s position believe that the interviewer was an agent of law enforcement?
At bottom, the inquiry is: Was this custodial interview conducted (explicitly or implicitly) on behalf of the police for the primary purpose of gathering evidence or statements to be used in a later criminal proceeding against the interviewee? Put another way, is the interviewer acting as an “instrumentality” or “conduit” for the police or prosecution? Most simply: is the interviewer “in cahoots” with the police?
Id. at 530-531 (footnotes omitted).
We find the list of factors in this Texas case worthy of mentioning. We *1035 note not all of these factors will be probative in every case, and the presence or absence of any one factor should not be considered dispositive. Instead, courts must consider the totality of circumstances in each case. The most important factors are those discussed in State v. Perry, 502 So.2d 548 (La.1986): whether the investigator discussed the case with police prior to the interview, whether the interview was conducted at the police’s request, and whether the primary purpose of the investigator’s visit was to elicit a confession while in cahoots with law enforcement. In short, police may not circumvent Miranda by using OCS investigators (or anyone else) as stand-ins to conduct interrogations in their stead.
Applying a case-by-case standard, we now turn to the record evidence before us in determining whether Collins was an agent of law enforcement when she interviewed defendant.
D. Miranda vis-a-vis Collins
| if;As a general rule, it is left to the trial court to determine whether a person conducting an interrogation is acting as an agent of law enforcement. The trial court’s conclusions on credibility and weight of the testimony are to be “accorded great weight and will not be overturned unless they are not supported by the evidence.” State v. Anderson, 06-2978, p. 25 (La.2008) 996 So.2d 973, 994. The only witness to testify at the hearing on defendant’s motion to suppress was Collins, thus the relevant facts are undisputed. On a motion to suppress where the “facts are not in dispute, the reviewing court must consider whether the trial court came to the proper legal determination under the undisputed facts.” State v. Pham, 2001-2199, p. 4 (La.App. 1 Cir. 1/22/03), 839 So.2d 214, 218.
Apparently the trial court applied an incorrect legal standard, i.e., because Collins was an “agent of the State of Louisiana” and defendant was “in custody,” it applied a bright line rule and found Miranda rights were triggered before Collins interviewed the defendant. Because this was error and the trial court did not make a fact-driven determination, we will review the record de novo to determine whether Collins was acting as an agent of law enforcement when she interviewed defendant.
It is undisputed Collins did not work for the police department and had no authority to make an arrest. The police did not ask her to interview defendant. Significantly, she had not spoken with police or prosecutors at any time prior to interviewing him. The purpose of her visit and report was to determine whether Claudia, defendant’s live-in girlfriend, was a fit parent. She did not interview defendant in order to investigate the criminal allegations against him, nor were the charges brought against defendant increased as a result of Collins’ report. Moreover, Collins specifically told defendant she was not there to interrogate him regarding his alleged crimes and, further, she would leave if he did not want to talk to her. Most 117importantly, there is no evidence the police purposefully used, manipulated, or were in cahoots with Collins for purposes of conducting the interview on their behalf. As we held in State v. Phillips, 444 So.2d 1196, 1199 (La.1984), there is absolutely no evidence of a “team effort” between Collins and the police to break down defendant’s defenses via cooperative interrogation. Under these circumstances, we find Collins was not required to give defendant his Miranda rights before she interviewed *1036 him.[7] Accordingly, the motion to suppress should have been denied.
DECREE
For the foregoing reasons, the judgment of the lower courts are reversed, vacated, and set aside; the motion to suppress is denied. This matter is remanded to the district court for further proceedings consistent with the views expressed herein.
REVERSED AND REMANDED.
JOHNSON, J., concurs and assigns reasons.
GUIDRY, J., concurs with reasons.

 Kimball, C.J., did not participate in the deliberation of this opinion.

. Defendant was charged with two counts of aggravated rape of a juvenile, La. Rev.Stat. § 14:41; one count of distribution of cocaine to a juvenile, La. Rev.Stat. §§ 40:967 and 981; and one count of false imprisonment with a dangerous weapon, La. Rev.Stat. § 14:46.1.

. 2009-1178 (La. 11/18/09), 25 So.3d 779.

. Defendant, arguing pro se before the trial court, urged the videotape of his confession had been somehow altered or edited and scenes of police brutality were excised. When presented with a signed waiver of rights form, he claimed his signature was forged. The trial court denied the motion to suppress the September 5, 2006 confession. At oral argument defense counsel conceded defendant was read his Miranda rights prior to the September 5, 2006 interrogation.

.The contents of this anonymous call are kept confidential and neither the contents of the call nor its date are in the record. Collins testified the subject matter of the call concerned the events of September 5, 2006.

. Children's Code art. 606(a) defines a “child in need of care” as, among other things, a child who “is the victim of abuse perpetrated, aided, or tolerated by the parent or caretaker, by a person who maintains an interpersonal dating or engagement relationship with the parent or caretaker, or by a person living in the same residence with the parent or caretaker as a spouse whether married or not."
Children’s Code art. 615(B) provides that, if the child protection officer determines that the subject of the investigation is a "child in need of care," the "local child protection unit ... shall notify the district attorney as soon as possible.” Presumably, this is the statute Collins is referring to when she states she is required “by law” to submit her report to the juvenile division of the district attorney's office.
A proceeding to terminate parental rights under the Children’s Code is a civil proceeding.

. The Saltzman court was unsure whether the relevant legal standard was the broad "state actor” test referenced in Maise or the narrower “law enforcement official” test set forth in Hathorn and in Miranda itself. The court found it unnecessary to resolve the issue, as under the facts of the case either standard was met.

. Because we find Collins was not acting as an agent of law enforcement, we need not address whether Collins’ questioning was an "interrogation” under Miranda or whether defendant was in "custody” pursuant to the recent U.S. Supreme Court decision of Maryland v. Shatzer, 559 U.S. -, 130 S.Ct. 1213, — L.Ed.2d - (2010).