TERRI F. LOVE, Judge.
|, The juvenile, A.J.[1], appeals his adjudication as a delinquent for violation of La. R.S. 14:95.2 (the illegal carrying of a firearm by a student on school property) and La. R.S. 14:37.4 (aggravated assault with ,a firearm). A.J. assigns as error that (1) the evidence was insufficient to support his adjudication as a delinquent; (2) the scope of questioning by the trial court showed bias and a lack of impartiality, warranting a new trial; (3) A.J.’s statement to the Dean of Students was improperly admitted at trial as it was made without A.J. being advised of his Miranda[2] rights, and it was not shown that it was freely and voluntarily made; (4) counsel was ineffective for failing to pursue the motion to suppress statement and failing to object to its admission at trial; and, (5) the trial court erred in imposing court costs and fees in excess of the amount authorized by statute. We find the testimonial evidence was sufficient to prove both charges beyond a reasonable doubt, the trial court’s scope of questioning was within its authority as a fact finder, the admission |2of A.J.’s statement was not in error, and counsel for A.J. was not ineffective. Additionally, we find the trial court erred in imposing court costs and fees in excess of the amount authorized by La. R.S. 13:1595.2. Accordingly, we affirm AJ.’s adjudication as a delinquent for violation of La. R.S. 14:95.2 and 14:37.4 and amend the $55.00 fee assessment and reduce it to $50.00 in accordance with La. R.S. 13:1595.2.

FACTUAL AND PROCEDURAL BACKGROUND

In January 2014, D.W. was waiting for her father to pick her up in front of Me-dhard H. Nelson Elementary School after school hours, when she was approached by A.J. and his cousin T.M., who was dating one of the girls standing with D.W. While T.M. and his girlfriend stepped away to talk, A.J. began to flirt with D.W.; however, D.W. ignored him. At trial, D.W. testified that A.J. then pulled out a gun from his waistband and pointed it at the ground. D.W. testified that she was “a little afraid” when she saw the gun and that A.J. pointed the gun at her feet. D.W. stated that A.J. stood there for a few seconds before he walked off with T.M. Shortly thereafter, D.W.’s father picked her up.
T.M. testified that on the date of the incident he and A.J. went to the school to meet his girlfriend. T.M. stated that he first saw the gun when A.J. attempted to readjust it to keep it from falling from his waistband. At trial, T.M. testified that he heard D.W. laugh when she saw the gun stating, “I’m not scared of no [sic] gun” and that she had been around guns in the past. D.W. then walked away and |3was picked up by her father. T.M. stated that he and A.J. also walked away without further incident.
D.W. testified that she did not tell anyone about the incident until the following week when Dean of Students Edward Lewis (“Mr. Lewis”) was informed by the school’s band instructor about the incident.[3] Mr. Lewis testified that initially he *664 tried to speak with D.W. but could not find her. Mr. Lewis then located A.J. and questioned him about the incident. Mr. Lewis testified that A.J. admitted to having a gun on the school’s campus and pulling it out in D.W.’s presence. Additionally, Mr. Lewis stated he never saw a gun on campus and did not find one on A.J.’s person.
A.J. was subsequently arrested and charged with violation of La. R.S. 14:95.2 (illegal carrying of a firearm by a student on school property) and 14:37.4 (aggravated assault with a firearm). Prior to trial, the state gave notice that it intended to offer evidence of A.J.’s statement to Mr. Lewis. Defense counsel then filed a motion to suppress statements; however, a suppression hearing never took place. At trial, A.J. was adjudicated a delinquent on both charged offenses. At the disposition hearing, the trial court imposed six months dispositions on each charge to run concurrently. The trial court suspended the disposition and placed A.J. on six months active probation with special conditions. The trial court also assessed fees in the amount of $205.00, $55.00 of which were considered the minimum costs to be paid. This timely appeal follows.

J¿STANDARD OF REVIEW

In juvenile proceedings, the State must prove the child a delinquent beyond a reasonable doubt. La. Ch. C. art. 883. “The standard for the State’s burden of proof in a juvenile delinquency proceeding is ‘no less strenuous than the standard of proof required in a criminal proceeding against an adult.’ ” State in the Interest of R.L., 11-1721, p. 3 (La.App. 4 Cir. 5/30/12), 95 So.3d 1147, 1150 (citing State in the Interest of A.G., 630 So.2d 909, 910 (La.App. 4 Cir. 12/30/93)).
“While delinquency proceedings may in many ways implicate criminal proceedings, sometimes even mimicking them, they are nonetheless civil in nature.” State in the Interest of D.R., 10-0405, p. 5 (La.App. 4 Cir. 10/13/10), 50 So.3d 927, 930. Consequently, the reviewing court must review both law and facts when reviewing juvenile adjudications. La. Const. art. V, § 10(B). “[A] factual finding made by a trial Court in a juvenile delinquency adjudication may not be disturbed by an appellate court unless the record evidence as a whole does not furnish a basis for it, or it is clearly wrong.” State in the Interest of R.L., 11-1721, p. 3-4, 95 So.3d at 1150. See also State in the Interest of Batiste, 367 So.2d 784 (La.1979). In the present case, this Court applies the clearly wrong/manifest error standard of review in determining whether the State proved A. J. a delinquent of the charged offenses beyond a reasonable doubt.
| SUFFICIENCY of evidence
On appeal, counsel for A.J. avers the evidence is insufficient to establish that A.J. was carrying a gun on a school campus or in a firearm-free zone. La. R.S. 14:95.2 states that it is unlawful for a student to carry a firearm on one’s person at any time while “... on a school campus, on school transportation, or at any school sponsored function in a specific designated area including but not limited to athletic competitions, dances, parties, or any extracurricular activities, or within one thousand feet of any school campus.” (emphasis added). A.J. avers that the location of the incident was not sufficiently detailed by witness testimony to establish beyond a reasonable doubt that A. J. had a gun while on the school’s campus. We find this argument without merit.
D.W. testified at trial that she was standing in front of the school when A.J. approached her and pulled the gun from his waistband. Additionally, T.M. testified *665 that when he first saw A.J. holding the gun, he was standing in front of the school and both A.J. and D.W. were near the corner of the gate to the school. At trial, Mr. Lewis testified that A.J. admitted to bringing a gun to the school and pulling it out on D.W. Moreover, both witnesses present during the incident, D.W. and T.M., both testified that they saw A.J. with a gun. In light of the testimony advanced at trial demonstrating that A.J. was both, in possession of a firearm, and on a school campus or within 1000 feet of the school, the evidence was sufficient to adjudicate A.J. a delinquent of the illegal possession of a firearm by a student on a school campus, in violation of La. R.S. 14:95.2.
lfiLa. R.S. 14:37.4 requires a showing of an assault with a dangerous weapon. La. R.S. 14:36 defines assault as “... an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery.”
Here, D.W. testified that she was scared “a little afraid” when A.J. pulled the gun out from his waistband and pointed it at her feet. D.W. testified that she was afraid that A.J. would point the gun higher towards her face and did not know what he might do. In contrast to D.W.’s testimony, T.M. testified that he observed D.W. laugh and state, “I’m not scared of no [sic] gun. I been [sic] around guns.”
Determinations of witness credibility are within the province of the trier of fact, and the mere existence of contradictory testimony does not create reasonable doubt. State v. Stukes, 08-1217, p. 16 (La.App. 4 Cir. 9/09/09), 19 So.3d 1233, 1244 (“The jury was aware of the various inconsistencies and the differing versions offered by the State and the defense as to what led to the shooting, and the jury apparently chose to believe the testimony of the State’s witnesses over that of the defense. This court has repeatedly held that a factfinder’s credibility decision should not be disturbed unless it is clearly contrary to the evidence.”) As previously stated, a factual finding by a trial court in juvenile delinquency adjudications will not be disturbed unless it is clearly wrong. In this case, we cannot say that the trial court’s factual findings were clearly wrong. Accordingly, we find the evidence was sufficient for the trial court to find A.J. a delinquent on both offenses charged.

\7La. C.E. art. 614(B)

La. C.E. art. 614(B) permits the trial court to question witnesses, whether called by itself or by a party. The power to question witnesses, however, is limited in that it “does not authorize a court to exercise that power in the same manner as adversary counsel.” See La. C.E. art. 614, comment (c). Therefore, the trial court must maintain impartiality and avoid becoming an advocate for either side.
The Louisiana Supreme Court in State v. Layssard, 310 So.2d 107, 108 (La.1975), concluded:
Where the judge is the trier of fact he has the right to question the witness to clarify the evidence in his mind. Unless his participation in the trial is to such an extent and of such a nature that it deprives the defendant of a fair trial, there is no error.
Furthermore, when the trial court’s questions go beyond mere clarification of evidence and begin to develop evidence adverse to. the child’s interest, the trial judge’s questioning of the witnesses will not deprive the child a fair trial in the adjudication proceeding if the witness did not seem intimidated or frightened by the interrogation, and the questions were relevant to the offense charged. State ex. rel. D.R., 10-0405, p. 5, 50 So.3d at 930.
*666 Counsel for A.J. claims the trial judge stepped outside her role as a neutral fact-finder and stepped into the role of adversary and advocate for the State. As the factfinder in the present case, the trial judge was allowed to question witnesses to clarify evidence. The defense objected to the trial judge’s questioning when she attempted to clarify the order of events and locations of witnesses during the incident. Defense counsel complained that the trial judge overstepped the bounds |sof her authority to question the witness, objecting, to the trial court “taking on the role of the prosecutor.” The trial court stated:
And obviously, if neither the prosecutor nor the defense attorney asked the questions for the judge to be able to make a decision, I have' the right to ask any witnesses at all any questions. It’s your witness, you brought him in, you opened him up to it.
The defense objection arose after the questioning of T.M. resulted in conflicting answers as to where he was in relation to A.J. and what the argument between A.J. and D.W. was about. There is no evidence in the record that suggests that T.M. was frightened or intimidated by the trial court’s questions. Counsel for A.J., however, points to the trial court’s questioning of the victim D.W. as proof that the trial court’s questioning went beyond the scope of clarification.
During D.W.’s testimony, it was evident that D.W. was uncomfortable testifying. The trial court recessed the adjudication hearing to allow her an opportunity to talk with her parents after she testified that she never spoke with anyone about what had occurred. When the hearing resumed, the trial court intervened during the State’s direct examination of D.W. to explain the purpose of her testimony and why it was important that she tell the court what happened. After questioning from both sides, the trial court asked D.W. to clarify her testimony about what occurred during the incident. During the trial court’s questioning, D.W. testified that she was “a little afraid” when A.J. pulled the gun out and that she feared what he might do with the gun.
Our review of D.W.’s testimony demonstrates that the trial court’s questioning did not go beyond the scope of clarification. Further, the suggestion that D.W. was frightened or intimidated by the trial court’s questioning is attributable to her hesitation to testify in general and not specifically with regard to |3the trial court’s questioning. Therefore, we find the trial court’s questioning of the witnesses did not go beyond the scope of clarification, and A.J. was not deprived a fair trial.

ADMISSION OF STATEMENT

In his next assignment of error, A.J. claims his statement made to the Dean of Students was erroneously admitted at trial. A.J. contends Mr. Lewis was acting as an agent of the State and in concert with law enforcement when Mr. Lewis questioned him about bringing a gun on the school’s campus. A.J. avers that because Mr. Lewis was acting as an agent of the State, the questioning amounted to a custodial interrogation. Therefore, his confession was inadmissible given he was not advised of his Miranda rights, and the State did not establish at trial that his statement was freely and voluntarily made.
In Miranda v. Arizona, 384 U.S. at 444, 86 S.Ct. at 1612, the United States Supreme Court held:
[T]he prosecution may not use statements, whether exculpatory or incul-patory, stemming from custodial interrogation of the defendant unless it *667 demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.
(Emphasis added).
The foregoing passage makes clear Miranda “only applies if three conditions are met: (1) the defendant is in ‘custody or significantly deprived of freedom, (2) there is an ‘interrogation,’ and (3) the interrogation is conducted by a ‘law enforcement officer’ or someone acting as their agent.” State v. Bernard, 09-1178, p. 5 (La.3/16/10), 31 So.3d 1025, 1029.
ImCounsel for A.J. contends that pursuant to La. R.S. 14:95.2(G), school officials are mandatory reporters, subject to a criminal penalty for any failure to report an offense within seventy-two hours. Consequently, the only purpose for questioning A.J. was to “acquire evidence for a criminal prosecution.”
In Bernard, the defendant was charged with two counts of aggravated rape of a juvenile, one count of distribution of cocaine to a juvenile, and one count of false imprisonment with a dangerous weapon. A child protection officer interviewed the defendant as part of an investigation of child abuse or neglect directed at his live-in girlfriend; during the interview, the defendant admitted to using cocaine. Id., 09-1178, p. 1-2, 31 So.3d at 1027-28. The defendant moved to suppress his statement he made to the child protection officer, based on her failure to advise him of his Miranda rights. Id., 09-1178, p. 2, 31 So.3d at 1028. The trial court granted the motion to suppress and the First Circuit affirmed. Id. The Louisiana Supreme Court concluded that Miranda does not apply to all state actors, but only those who are law enforcement officers or acting as their agent. Id., 09-1178, p. 11, 31 So.3d at 1032. The Bernard court acknowledged there is no bright line rule for determining whether one is acting as an agent of law enforcement; and therefore, each case must be decided on its own set of facts. Id., 09-1178, p. 12, 31 So.3d at 1033.
In Bernard, the Supreme Court disagreed with the trial court’s finding that because the child protection officer was “an agent of the State” and the defendant was “in custody” at the time she interviewed him, Miranda applied. Id., 09-1178, p. 16, 31 So.3d at 1035. The Supreme Court reasoned that under a fact-driven determination the child protection officer was not an agent of law enforcement. Notably, she did not work for the police department, had no authority to make an | ^arrest, and had not talked with the police department or prosecutors prior to her interview with the defendant. Id. The purpose of her interview with the defendant was to determine whether the defendant’s live-in girlfriend was a fit parent and was unrelated to the criminal allegations against the defendant. Id. See also State v. Barrett, 95-2613, p. 14 (La.App. 1 Cir. 11/8/96), 683 So.2d 331, 339 (Appellate court found the principal was not acting as an agent for law enforcement and Miranda did not apply when asking why the defendant, a student at the school, was carrying $400 in case and “had not been taken into custody, detained, or deprived of his freedom of action, other than as appropriate considering his status as a student at school”).
Similarly, in the context of this case, we find Mr. Lewis is not an agent for law enforcement. Nothing in the record indicates that Mr. Lewis questioned A.J. while in the presence of law enforcement, nor *668 was there any indication that law enforcement was conducting an investigation at the time Mr. Lewis spoke with A.J. Additionally, there is no evidence questioning A.J. was a team effort between the law enforcement, the prosecutors, and Mr. Lewis. Rather, the record demonstrates Mr. Lewis was acting in his role as Dean of Students to carry out school discipline and safety, not acquiring evidence for a criminal prosecution.
Simply because law enforcement subsequently became involved and criminal charges were filed based on what Mr. Lewis learned does not create an instance where we would consider Mr. Lewis as working in concert with law enforcement. As such, we find the statement was admissible at trial and does not implicate the safeguards of Miranda v. Arizona. Therefore, this assignment of error is without merit.
1 ^Furthermore, even if there was merit to counsel’s argument, we find that defense counsel’s failure to pursue the motion to suppress or to contemporaneously object to the statement’s admission at trial, foreclosed A.J.’s opportunity to raise the issue on appeal. Pursuant to La.C.Cr.P. art. 841, “[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.” See also State v. Landry, 560 So.2d 598, 602 (La.App. 4th Cir.4/12/1990).[4] For this reason, counsel for A.J. argues that his trial counsel was ineffective and the deficient performance impacted the verdict in this case.
In general, “the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post-conviction relief, filed in the trial court where a full evidentiary hearing can be conducted.” State v. Wilson, 99-3151, p: 7 (La.App. 4 Cir. 11/8/00), 773 So.2d 222, 227 (citing State v. Prudholm, 446 So.2d 729, 737 (La.1984)). “Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issue on appeal.” Id., 99-3151, p. 7-8, 773 So.2d at 227. In this case, we find there is sufficient evidence to rule on the merits of A.J.’s ineffective assistance of counsel claim.
Ineffective assistance of counsel claims are analyzed under the two-prong test of Strickland v. Washington, 446 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The appellant must show that counsel’s performance was deficient and that the deficiency prejudiced him. Id., 466 U.S. at 687, 104 S.Ct. at 2064. Counsel’s performance is ineffective when it can be shown that she made errors so serious |13that counsel was not functioning as the “counsel” guaranteed to the appellant by the Sixth Amendment. Id. Counsel’s deficient performance will have prejudiced the appellant if he shows that the errors were so serious as to deprive him of a fair trial. Id. To carry his burden, the appellant “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” *669 Id., 466 U.S. at 694, 104 S.Ct. at 2068. The appellant must make both showings to prove that counsel was so ineffective as to require reversal. Id.
Additionally, this Court discussed in State v. Reichard, 05-1262, p. 5-6 (La.App. 4 Cir. 6/21/06), 935 So.2d 727, 731, what constitutes effective counsel:
An “effective counsel” has been defined as “not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance.” State v. Anderson, 97-2587, p. 7 (La.App. 4 Cir. 11/18/98), 728 So.2d 14, 19 (citing, State v. Seiss, 428 So.2d 444 (La.1983)). Given that “opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel’s trial decisions. Neither may an attorney’s level of representation be determined by whether a particular strategy is successful.” State v. Crowell, 99-2238, p. 8 (La.App. 4 Cir. 11/21/00), 773 So.2d 871, 878 (quoting State v. Brooks, 505 So.2d 714, 724 (La.1987)). It follows then “trial strategy” type errors do not constitute ineffective assistance of counsel. Crowell, 99-2238, at p. 8, 773 So.2d at 878 (citing State v. Bienemy, 483 So.2d 1105 (La.App. 4 Cir.1986)); State v. Bordes, 98-0086, p. 8 (La.App. 4 Cir. 6/16/99), 738 So.2d 143, 147 (quoting Bienemy, 483 So.2d at 1107 (noting that “[t]his court has previously recognized that if an alleged error falls ‘within the ambit of trial strategy’ it does not ‘establish ineffective assistance of counsel.’ ”)).
In this case, A.J. claims that but for defense counsel’s failure to obtain a ruling on the motion to suppress statement and failure to make a contemporaneous [ 14objection at trial, the outcome of the adjudication proceedings would have been different. The record, however, demonstrates that counsel’s actions were trial strategy in that defense counsel made a conscious decision not to pursue the motion to suppress statement or make a contemporaneous objection at trial. Defense counsel’s strategy at trial was not to debate that A.J. brought a gun to school. Instead, defense counsel’s strategy was to contest the aggravated assault with a firearm offense. In defense’s opening and closing statements, counsel for A.J. readily admitted that A.J. brought a gun to school, and both D.W. and T.M. testified that they saw A.J. with a gun.' For these reasons, we find that defense counsel’s decision not to pursue the motion to suppress statement or make a contemporaneous objection at trial falls within the ambit of trial strategy. Therefore we find no merit to A.J.’s ineffective assistance of counsel claim.

La. R.S. 13:1595.2

In A.J.’s final assignment of error, he contends that the trial court erred in imposing court fees in excess of that authorized by statute. La. R.S. 13:1595.2 provides for the assessment of fees to the Judicial Expense Fund for Juvenile Court. The statutes provides in pertinent part:
A. In all delinquency and children in need of supervision cases over which the Orleans Parish Juvenile Court has jurisdiction, there shall be taxed as costs against every juvenile who is adjudicated delinquent, admits to allegations contained in the petition, or enters into an informal adjudication the sum of fifty dollars, which shall be transmitted to the judicial administrator of the Orleans Parish Juvenile Court for further disposition in accordance herewith.
B. The judicial administrator shall place all sums collected or received under this Section in a separate account to be designated as the judicial expense fund for the Orleans Parish Juvenile *670 Court. The 11judges of the court shall cause to be conducted annually an audit of the fund and the books and accounts relating thereto and shall file the same with the office of the legislative auditor where it shall be available for public inspection.
In this case, the trial court made two assessments in the amount of $55.00 and an additional court cost of $150.00 authorized by court rule. Counsel for A.J. asserts, and the State concedes, that the assessment of $55.00 exceeds the statutory maximum. In light of La. R.S. 13:1595.2, the trial court’s assessment exceeds the statutory maximum in the sum of five dollars. We, therefore, amend the $55.00 fee assessment and reduce it to $50.00 in accordance with La. R.S. 13:1595.2(A).

DECREE

Based on the foregoing reasons, we affirm the adjudication of A.J. as a delinquent and amend the fee assessment.
AFFIRMED IN PART; AMENDED IN PART
LOBRANO, J., concurs in the result.

. Pursuant to Rules 5-1 and 5-2 of the Uniform Rules-Courts of Appeal, the initials of the juveniles involved in this matter will be used instead of their names.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. The band instructor did not testify at trial; and therefore, what and how he learned of the incident was never disclosed.

. Evidence of defendant's daughter's arrest and her mother’s conviction for selling drugs was not a basis for objection on appeal where defendant made no contemporaneous objection to this evidence in the trial court when it was initially produced and defendant, who was charged with selling drugs to same policeman who arrested his daughter and her mother, made conscious decision to allow this evidence of previous arrests in order to provide a basis for defendant’s argument that defendant would not sell drugs to a person he knew was policeman.